PADOVANO, J.
This is an appeal from a final order setting the amount of an attorney’s fee in an eminent domain case. We conclude that the trial court erred in computing the fee based on the difference between the amount of the jury verdict and the value the Department placed on the landowner’s property in its trial testimony. Because the Department had previously submitted a valid offer to purchase the property, the fee should have been based on the difference between the verdict and the amount of the offer. Accordingly, we reverse with instructions to recalculate the fee.
The controversy in this case turns on the legal effect of a letter the Department delivered to the landowner, Lakepointe Associates, on February 9, 1995. In the letter, the Department informed Lake-pointe that it was in the process of obtaining a right of way for a state construction project in Duval County and that it needed to acquire Lakepointe’s property. The Department offered to purchase the property in the following passage of the letter:
You are further advised that the Department’s offer of just compensation for the property required for the construction of this facility is based on the Fair Market Value of the property and that the Department’s offer to you is not less than the approved appraised value of the property.
The following represents a summary of the Department’s offer to you and the basis therefor.
Land' $ 785,648
Improvements $
Damages $ 381,685
Total $1,167,350 (Rd.)
The letter contained a signature line for the District Right of Way Administrator, but it was not signed by the Administrator. Counsel for the Department explained that the letter was printed on a standard form that is routinely sent out in all condemnation cases and, like all of the others, it does not contain a signature. Lakepointe’s rep *366 resentative, Thomas F. Jones, acknowledged receipt of the letter.
Lakepointe did not accept the Department’s offer, and the property in question was eventually included in a condemnation proceeding. The Department sought an order of taking and submitted a good faith estimate indicating that the property was worth $1,167,850. A hearing was held on the taking issue on February 28, 1996. Subsequently, the trial court entered an order of taking and required the Department to deposit in the registry of the court the amount of its good faith estimate. The funds were then paid over to Lakepointe.
The case proceeded to a jury trial on the issue of damages. At some point before trial, the Department had reconsidered the value of the property. Relying on the revised estimate, the Department’s expert witness testified at trial that Lakepointe was entitled to recover $832,400 as just compensation for the taking. Lakepointe’s expert witness set the amount of damages at $1,941,500, more than double the amount suggested by the Department. The jury rejected both positions and returned a verdict of $1,301,243.
After the verdict, Lakepointe sought attorney’s fees based on the full amount of the damages awarded by the jury. Lake-pointe argued that the Department’s February 9, 1995, letter was not a written offer as contemplated by section 73.092, Florida Statutes, because it was not signed, and because it did not create a power of acceptance. On this premise, Lakepointe reasoned that the value of the legal services should be measured by the full amount of the verdict, as if the offer had been zero. The Department conceded liability for attorney’s fees but maintained that the benefit to the landowner should be measured by the difference between the verdict and the offer made in its February 9, 1995, letter. In support of this position, the Department argued that the letter was a valid offer for the purpose of assessing attorney’s fees, despite the absence of the Administrator’s signature.
The trial court was persuaded that the Department’s letter did not qualify as an offer under section 73.092, but disagreed with Lakepointe’s proposed method of computing the fees. The court held that, in the absence of a valid offer, the benefit to the property owner should be measured by comparing the Department’s trial testimony regarding the value of the property with the value set by the jury verdict. Following the denial of a motion for rehearing, the Department filed a timely appeal to this court.
We begin by examining section 73.092, Florida Statutes, which governs the award of attorney’s fees in eminent domain cases. Subsection (l)(a) of this statute provides that attorney’s fees shall be based on the benefit achieved by the landowner’s attorney. According to the statute, the benefit achieved is directly related to the amount of money the attorney has obtained for the landowner beyond that which the condemning authority was willing to pay. Subsection (l)(a) expresses these principles in the following terms:
(1) Except as otherwise provided in this section, the court, in eminent domain proceedings, shall award attorney’s fees based solely on the benefits achieved for the client.
(a) As used in this section, the term “benefits” means the difference, exclusive of interest, between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney. If no written offer is made by the con- ■ demning authority before the defendant hires an attorney, benefits must be measured from the first written offer after the attorney is hired.
A formula for determining the monetary amount of the benefit the attorney has achieved is set out in another part of the same statute. Subsection (c) provides in material part:
*367 (c) Attorney’s fees based on benefits achieved shall be awarded in accordance with the following schedule:
1. Thirty-three percent of any benefit up to $250,000; plus
2. Twenty-five percent of any portion of the benefit between $250,000 and $1 million; plus
3. Twenty percent of any portion of the benefit exceeding $1 million.
§ 73.092(l)(c) Fla. Stat. (1997).
Taken as a whole, the attorney’s fee provisions in section 73.092, Florida Statutes are designed to promote early settlement of eminent domain cases. The condemning authority must make a realistic offer to purchase the landowner’s property in order to avoid liability for a disproportionate award of attorney’s fees. At the same time, the landowner must accept a reasonable offer to minimize the risk that the litigation expenses will not be fully recovered.
One significant feature of this statutory scheme is that it assumes the condemning authority will make an offer to purchase the landowner’s property. Section 73.092 does not explain the method of computing attorney’s fees if the condemning authority fails to make an offer.[1] This issue is not likely to arise often, however, as the condemning authorities know they will always be required to offer payment in some amount for the landowner’s property. In any event, we need not determine the proper method of calculating attorney’s fees in the absence of an offer, because we conclude that the Department’s February 9, 1995, letter was a valid offer as contemplated by section 73.092, Florida Statutes.
An offer has been defined in the context of an eminent domain case as “an expression by a party of assent to certain definite terms, provided that the other party involved in the bargaining transaction will likewise express assent to the same terms.” Pierpont v. Lee County, 710 So.2d 958, 960 (Fla.1998). The letter in the present case plainly meets this definition of an offer. In the letter, the Department categorically stated that it was offering to purchase Lakepointe’s property and it provided an itemized breakdown of the total offering price. By the terms of the letter, the Department expressed its “assent to certain definite terms” upon which it would be willing to purchase Lake-pointe’s property.
The supreme court decided in Pierpont that a good faith estimate of the value of property is not the equivalent of an offer under section 73.092, Florida Statutes. As the court explained, the purpose of making a good faith estimate of value in an eminent domain case is entirely different from the purpose of making an offer to purchase. The decision in Pierpont does not support Lakepointe’s argument in the present case, however, because the Department is not relying on the good faith estimate to support its version of the computation. Although the amount of the good faith estimate is the same as the amount of the offer to purchase, the Department’s argument regarding the computation of attorney’s fees is based on the offer, not the estimate.
The offer in the present case was unconditional, and in that respect it is very different from the promise the condemning authority made to the landowner in City of Jacksonville v. Tresca, 692 So.2d 991 (Fla. 1st DCA 1997). In Tresca, the city obtained an option to purchase the landowner’s property at a set price. We concluded that the option was not the equivalent of an offer under section 73.092, because it did not obligate the city to purchase the property. The effect of the transaction was merely to give the city a right to purchase the landowner’s property at a stated price if it elected to purchase the property at all. In contrast, the letter in the present case created an obligation on *368 the part of the Department to purchase the property for the amount stated in the offer.
Lakepointe argues that the Department’s offer is not valid because it was unsigned, but there is nothing in the statute that indicates an offer by a condemning authority must be signed to be valid. Section 73.092 states in several places that the offer by the condemning authority must be “written” but it does not state or imply that the offer must be signed. The Department’s February 8, 1995, letter plainly meets the writing requirement of the statute. Moreover, it is clear from the circumstances that the letter was intended as a binding offer, despite the absence of a signature. The letter was written on official Department of Transportation stationery and it was hand delivered to Lake-pointe by an authorized representative of the Department.
We recognize that a contract to purchase real property must be signed, but that requirement does not alter our conclusion regarding the validity of the Department’s offer. The signature requirement imposed by the Statute of Frauds applies to the contract, not to the offer to make a contract. See § 725.01, Fla. Stat. (1997); Richard A. Lord, Williston on Contracts, Chapter 4 (4th ed.1990). Section 73.092 was not enacted to provide a method of enforcing a contract for the sale of land. Rather, the essential function of the statute is to establish a mechanism for determining the extent of the condemning authority’s liability for attorney’s fees. Presumably, the condemning authority will make an offer in some amount in every eminent domain case. The question is not whether the condemning authority will make good on its offer to purchase the property, but how much it will be required to pay.
Furthermore, it is clear that the Department intended to prepare a formal written contract for the purchase of the property if Lakepointe had accepted its offer. The contract could not have been formalized by Lakepointe’s acceptance alone, because the Department was required by law to wait at least thirty days from the date of acceptance. See § 119.07(3)(n), Fla. Stat. (1997) (stating that an agency shall not formalize a contract to purchase property acquired by eminent domain for a period of thirty days, “to allow public review of the transaction”). Hence, it would be unreasonable to interpret the offer requirement of 73.092 to mean that the condemning authority must submit a self-executing offer that becomes a binding contract immediately upon acceptance. The Department could not lawfully meet such a requirement in any case.
For these reasons, we conclude that the Department’s February 9, 1995, letter was a valid offer to purchase Lakepointe’s property. Consequently, the attorney’s fees should have been computed under section 73.092, Florida Statutes, based on the difference between the amount of the offer and the amount of the jury verdict.
Reversed.
BARFIELD, C.J., and MINER, J., CONCUR.

. This issue is raised in Lakepointe’s cross appeal. We need not decide the issue here, however, because it has been rendered moot by our decision in the main appeal.