929 So.2d 1099 (2006)
CITY OF BOYNTON BEACH, Appellant,
v.
Frank JANOTS, Theodore Ryan, Gerhart Degen, Robert P. Brown, Jr., Charles Felman, Sylvia Felman, State of Florida, and United States of America, Appellees.
No. 4D05-2521.
District Court of Appeal of Florida, Fourth District.
May 3, 2006.
Kerry L. Ezrol and Michael D. Cirullo, Jr. of Goren, Cherof, Doody & Ezrol, P.A., Fort Lauderdale, for appellant.
Erskine C. Rogers, III of Rutherford Mulhall, P.A., Palm Beach Gardens, for Appellees Theodore Ryan and Gerhart Degen.
STONE, J.
In this eminent domain action, we reverse an order awarding attorney's fees under section 73.092, Florida Statutes. The issue is which of two letters from the city attorney of Boynton Beach (City) to *1100 property owners constituted an "offer" to the owners for the purpose of determining the date from which to compute entitlement to attorney's fees. We find the nature of the first letter to be dispositive.
City filed a petition in eminent domain in October 2003. One of the attachments to the petition was the taking resolution adopted August 5, 2003, which declared the public necessity for acquiring the parcels in question for construction of a drainage/retention pond. The city commission further authorized the city attorney to acquire the parcels.
Section 73.015, Florida Statutes, provides, in relevant part:
. . . before an eminent domain proceeding is brought under this chapter or chapter 74, the condemning authority must attempt to negotiate in good faith with the fee owner of the parcel to be acquired, must provide the fee owner with a written offer and, if requested, a copy of the appraisal upon which the offer is based, and must attempt to reach an agreement regarding the amount of compensation to be paid for the parcel.
After consent final judgments were entered, the court held a hearing on Appellees' motion for fees and costs. At issue were the two letters that were sent to Appellees regarding purchase of their property.
The first letter, dated July 7, 2003, sent to each appellee, provided:
Please be advised that our law firm acts as the City Attorney for the City of Boynton Beach.
On behalf of the City, I am authorized to offer to purchase your property for $62,000.00. This offer is contingent upon the execution of an agreement for purchase and sale and is further subject to the approval of the Boynton Beach City Commission.
This offer will remain available for acceptance by you until July 31, 2003 at 5:00 p.m. In the event that you do not accept the offer in writing by then, the offer shall be automatically revoked.
The second letter, more lengthy and detailed, dated August 7, 2003, provides, in relevant part,
Please be advised that our law firm acts as the City Attorney for the City of Boynton Beach. On August 5, 2003, the City Commission authorized the acquisition of the subject property by negotiation or condemnation, if negotiation is unsuccessful.
* * *
Additionally, before an eminent domain proceeding is brought, the City must attempt to negotiate in good faith with the owner of the property to be acquired and must provide the owner with a written offer. This shall further serve as the City's written offer pursuant to Section 73.015, Florida Statutes. The City hereby offers to acquire the property for $77,500.00.
By the consent judgments, each appellee was awarded $99,000. The difference in the final judgment or settlement award and the amount offered is determinative in calculating attorney's fees. The trial court measured the award from the first letter containing the lower "offer." We agree with City that the second letter was the offer applicable to computing the benefit to Appellees under the statutory scheme.
Section 73.092, Florida Statutes, provides, in part:
(1) Except as otherwise provided in this section and s. 73.015, the court, in eminent domain proceedings, shall award attorney's fees based solely on the benefits achieved for the client.

*1101 (a) As used in this section, the term "benefits" means the difference, exclusive of interest, between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney. If no written offer is made by the condemning authority before the defendant hires an attorney, benefits must be measured from the first written offer after the attorney is hired.
In City of Jacksonville v. Tresca, 692 So.2d 991 (Fla. 1st DCA 1997), which we deem instructive, the city negotiated an option to purchase to the landowner's property within 180 days for $107,000; the court held that this did not constitute an offer under section 73.092. Id. at 992. In so holding, the First District reasoned that:
an offer under the statute must be one whereby if it is accepted will constitute a legal obligation by the condemning authority to purchase the property for the amount stated in its offer. In the instant case . . . acceptance of the city's offer would not have guaranteed that appellants would receive $107,000 for their property. The option merely gave the city the right to purchase the property for six months if it unilaterally chose to do so.
Id. at 993.
Appellees rely on Department of Transportation v. Lakepointe Associates, 745 So.2d 364 (Fla. 1st DCA 1999). In that case, the issue was whether the department's unsigned letter to the landowner constituted an "offer" within the meaning of section 73.092. Id. at 366. In the letter, the department stated that the owner's land was needed for a right of way for a state construction project, and it offered just compensation for the property. Id. at 365.
The court, in holding that the department had made a valid offer under the statute, distinguished the offer in Tresca. Id. at 367. The court stated, "The offer in the present case was unconditional, and in that respect it is very different from the promise the condemning authority made to the landowner in [Tresca]." Id. "In contrast, the letter in the present case created an obligation on the part of the Department to purchase the property for the amount stated in the offer." Id. at 367-68.
Furthermore, it is clear that the Department intended to prepare a formal written contract for the purchase of property if Lakepointe had accepted its offer. The contract could not have been formalized by Lakepointe's acceptance alone, because the Department was required by law to wait at least thirty days from the date of acceptance. See § 119.07(3)(n), Fla. Stat. (1997)(stating that an agency shall not formalize a contract to purchase property acquired by eminent domain for a period of thirty days, "to allow public review of the transaction"). Hence, it would be unreasonable to interpret the offer requirement of 73.092 to mean that the condemning authority must submit a self-executing offer that becomes a binding contract immediately upon acceptance. The Department could not lawfully meet such a requirement in any case.
Id. at 368.
We deem Lakepointe distinguishable, as the letter from the department in that case was, in fact, the offer by the state subject only to drawing the contract and the passage of time required by law. It did not, as here, contemplate the need for any further discretionary review. Here, unlike Lakepointe, the government entity would not be bound by an acceptance. In order to conclude that Lakepointe is applicable, we *1102 would have to treat the resolution of the city commission as a ministerial act.
The requirement for approval by the city commission is not simply ministerial, and nothing in the letter indicates that this is the case. Clearly, if the offer had been accepted by Appellees and submitted for the first time to the commission, rejection by the commission was an optional exercise of discretion. Acceptance of the "offer" would not have bound City.
We, therefore, conclude that the first letter did not constitute an offer. Even if the first offer had been accepted, it would not have guaranteed the Appellees' receipt of the $62,000 for their parcels, nor bound the city unless and until the contingencies set forth in the letters were satisfied. There is also nothing in the first letter amounting to a threat of a taking or indicating that it was incident to a proceeding under section 73.015. There is no indication in the July 7, 2003 letter that it was anything other than an effort by the city administration to obtain the property by a standard real estate transaction.
In Tresca, the court stated "We determine that an offer under the statute must be one whereby if it is accepted will constitute a legal obligation by the condemning authority to purchase the property for the amount stated in its offer." 692 So.2d at 993. It is the August 7, 2003 letters in the instant case that meet the Tresca requirements; those letters contain no contingencies and meet the statutory requirement that an offer first be advanced by the condemning authority.
It is not unusual for a municipality to seek to acquire property without having first determined the property would be obtained through eminent domain. Such a transaction is at arm's length and the negotiating process need not differ in a material way from any other transaction that employs offers and counter-offers. There is nothing in such a negotiation process that pressures the property owner to obtain litigation counsel prematurely. Ultimately, should the municipality elect to pursue eminent domain upon failure to acquire the property through negotiation, it is required by law to make the pre-suit offer pursuant to section 73.015. The purpose of this statute is obviously not to incur unnecessary attorney's fees in litigation.
Therefore, the order is reversed, and we remand for modification of the amount of attorney's fees.
GROSS and MAY, JJ., concur.