978 So.2d 842 (2008)
JEA, a Body Politic and Corporate of the State of Florida, Appellant,
v.
Marilyn D. WILLIAMS, et al., Appellees.
No. 1D07-2559.
District Court of Appeal of Florida, First District.
April 3, 2008.
*843 Richard A. Mullaney, General Counsel, Bruce Page, Assistant General Counsel, and Joel B. Toomey, Chief, Appellate Division, Jacksonville, for Appellant.
William S. Graessle of William S. Graessle, P.A., Jacksonville, for Appellees.
ROBERTS, J.
In this eminent domain action, the JEA appeals a final order awarding additional attorney's fees. The JEA argues that the trial court erred in finding that the first letter to the appellees constituted an offer under section 73.092, Florida Statutes (2004). We disagree and affirm.

FACTS
The JEA is a public utility providing electrical and underground utility services in Duval and surrounding counties. In 2003, it began a project to expand its underground utility services to areas in southern Duval and northern St. Johns Counties already served by its electrical services.
The appellees, Marilyn D. Williams and Linda Trunick, as trustees of the Marilyn D. Williams Trust, owned property in southern Duval and northern St. Johns Counties, including parcel 100, on which the JEA had previously acquired easement rights for electrical transmission wires, and parcel 101. On September 5, 2003, as part of its plan to expand underground services, the JEA mailed the appellees the first letter through its agent, Bender Properties and Acquisition Services, Inc., seeking to obtain underground easement rights *844 on parcel 100. The letter identified the project as the "Greenland Transmission Line" and included project and real estate numbers. The letter stated in pertinent part:
The JEA, a municipal corporation, is planning to acquire utility rights on your property for the area described on the enclosed survey for underground utilities. You will find attached a copy of the legal description and parcel sketch for your records. The JEA has authorized me to offer you the appraised value of this easement in the amount of $62,000.00.
After receiving the first letter, the appellees contracted with condemnation counsel who began work on the case and conducted discussions with the JEA.
On March 16, 2004, the JEA passed a resolution authorizing the acquisition of parcels 100 and 101 through condemnation. The resolution outlined a fee interest in parcel 100, as described in the first letter, along with a fee interest in 20.14 acres of parcel 101.
On March 23, 2004, the JEA mailed the appellees the second letter through its agent which again identified a project name and included project and real estate numbers. In accordance with the resolution, the second letter informed the appellees that the JEA wanted to acquire a fee interest, rather than the previously mentioned remainder easement interest, in the original 21.04 acres of parcel 100 and also sought to acquire 20.14 acres of parcel 101. The letter stated in pertinent part:
As we discussed previously, JEA is planning to construct underground utilities across property owned by you. . . . On September 5, 2003, you were presented an offer with the supporting appraisal to purchase an easement to install underground utilities. . . . In the interest of time and to avoid further expense, JEA has authorized me to make the following offer to purchase the above referenced property. The offer to purchase parcel 100 [21.04 acres] is $85,000.00 and parcel 101 [20.14 acres] is $185,000.00.
The letter instructed the appellees to execute the attached purchase agreement if they agreed to the offer, but also stated that the amount of the offer was subject to the JEA's approval. The letter further noted that it included "excerpts from section 73.015, Florida Statutes, that are applicable to the JEA acquisition of [the] property."
On June 23, 2004, the JEA, this time on its own letterhead, mailed the appellees the third letter which further expanded the desired acreage of parcel 101 to 36.55 acres and offered $500,000 for both parcels. The letter included a new legal description and an updated appraisal but did not include a purchase agreement. The letter also stated that "excerpts from Florida Statutes included in the March letter still apply."
The appellees rejected the JEA's offer. On February 7, 2007, the JEA filed a petition for condemnation seeking to acquire a fee interest in the 21.04 acres of parcel 100 and the 36.55 acres of parcel 101, attaching its March 16, 2004, resolution. A stipulated final judgment was entered requiring the JEA to pay the appellees $2 million for both parcels. On April 13, 2007, the trial court entered an amended order taxing statutory attorney's fees. The trial court found that the first letter constituted the JEA's "first written offer" for the purposes of section 73.092, Florida Statutes (2004), and that the appellees had thereafter hired condemnation counsel. Based on those findings, the trial court awarded the appellees additional attorney's fees in the amount of $87,600 beyond the previous award for fees.

*845 ANALYSIS

Both Article X, Section 6 of the Florida Constitution and Article V of the United States Constitution require that no private property shall be taken for a public purpose without full compensation. A landowner's constitutional right to full compensation for property taken by the government includes the right to a reasonable fee for the landowner's counsel. Tosohatchee Game Preserve, Inc. v. Cent. & S. Flood Control Dist., 265 So.2d 681 (Fla. 1972). The Legislature has made a provision for the award of attorney's fees in eminent domain cases in section 73.092, Florida Statutes (2004), which provides, in pertinent part:
(1) Except as otherwise provided in this section, the court, in eminent domain proceedings, shall award attorney's fees based solely on the benefits achieved for the client.
(a) As used in this section, the term "benefits" means the difference, exclusive of interest, between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney. If no written offer is made before the defendant hires an attorney, benefits must be measured from the first written offer after the attorney is hired.
Once the "benefits" are determined, the attorney's fees are computed using a formula also found in section 73.092.
The JEA argues that the attorney's fees should be based on the difference between the third offer of $500,000 and the $2 million awarded by the trial court. The JEA asserts that the first letter was an offer to purchase property in an arm's length real estate transaction, thereby rendering section 73.092 inapplicable. It is undisputed that public entities with eminent domain powers have the authority to purchase property to complete their projects as if they were an ordinary purchaser of real estate. See City of Boynton Beach v. Janots, 929 So.2d 1099 (Fla. 4th DCA 2006). In an ordinary arm's length purchase, the landowner is not entitled to attorney's fees. Id. The JEA argues that the instant case is analogous to Janots. We find, however, that it is distinguishable. In Janots, the landowners received a letter which stated:
On behalf of the City, I am authorized to offer to purchase your property for $62,000.00. This offer is contingent upon the execution of an agreement for the purchase and sale and is further subject to the approval of the Boynton Beach City Commission.
Id. at 1100.
In the instant case, however, the JEA's first letter included a project name and number, a copy of the legal description and a survey of the property, and further stated that the JEA was "planning to acquire utility rights" to the appellees' property. We find that, upon receiving such a letter, reasonable property owners could conclude that the letter was more than an ordinary arm's length offer to purchase their property, but rather the initiation of presuit negotiations as contemplated by section 73.015, Florida Statutes. Thus, the appellees sought the advice and services of a condemnation attorney.
The JEA also argues that the first letter was not a binding offer under section 73.092 because it sought to acquire a different interest on the original property and less total property than the final taking. The JEA asserts that section 73.092 should be construed only to compute attorney's fees based on the first offer after the condemning authority finalizes its plans for the project. However, such a construction is not supported by the text of section 73.092 and judicial interpretation of the statute is not appropriate where the language of the statute is clear and unambiguous. See Citizens of the State of Fla. v. *846 Pub. Serv. Comm'n, 435 So.2d 784, 786 (Fla.1983). Section 73.092 states that attorney's fees are computed based on the difference between the last written offer before the landowner has hired counsel and the final judgment. As such, this Court is bound to give effect to the statute's clear and unambiguous language. See Holly v. Auld, 450 So.2d 217 (Fla. 1984).
The JEA also relies on Tosohatchee to argue that the first letter was not a binding offer because an eminent domain proceeding may not be initiated until a resolution is passed authorizing the condemning authority to acquire the property through eminent domain. The JEA argues that the first letter did not constitute a binding offer because their resolution was not passed until after the first letter was mailed to the appellees.[1] Such reliance, however, is misplaced.
In Tosohatchee, the Florida Supreme Court held that a petition for condemnation must be accompanied by an authorizing resolution in order to properly institute eminent domain proceedings. However, unlike the instant case, Tosohatchee did not deal with an offer made pursuant section 73.015, Florida Statutes (2004), prior to the commencement of a condemnation action. Section 73.015 requires the JEA to make a good faith attempt to negotiate with the appellees prior to the commencement of a condemnation action, but does not require that a resolution be passed in order for the condemning authority to begin that negotiation or extend a binding offer.
The JEA further argues that the first letter was not a binding offer because it did not contain definite terms. The JEA cites City of Jacksonville v. Tresca, 692 So.2d 991 (Fla. 1st DCA 1997), for the proposition that an offer must be binding for it to constitute an offer under section 73.092. In Tresca, however, this Court held that the city had not made an offer to purchase, but rather had entered into an option contract whereby the city could purchase the property at a designated amount if it elected to do so. Because an option contract did not obligate the city to purchase the property, it could not be an offer under section 73.092.
In contrast, in the instant case, the first letter clearly expressed the JEA's assent to certain, definite terms under which it would purchase the property. The agreement could be executed immediately at the appellees' discretion. The letter did not include any conditional language regarding its obligation to purchase the property. As such, the JEA was bound to the terms of the first letter, thus making it an offer under section 73.092. Moreover, an offer in eminent domain cases is an "expression by a party to assent to certain, definite terms, provided that the other party involved in the bargaining transaction will likewise express assent to the same terms." Pierpont v. Lee County, 710 So.2d 958, 960 (Fla.1998).
We conclude that the trial court properly computed attorney's fees based on the difference between the amount of the offer in the first letter and the stipulated final judgment amount. Because we find that the trial court correctly applied section 73.092, the order is
AFFIRMED.
KAHN and WEBSTER, JJ., concur.
NOTES
[1] This proposition is inconsistent with the position advanced by the JEA that the third offer is controlling for the purposes of section 73.092 because the resolution was passed preceding the second offer.