RAMIREZ, J.
The City of North Miami Beach appeals the award of attorney’s fees to appellees H. Randolph Reed, Gina T. Reed, Leonard R. St. Germain, and Sandra St. Germain. We affirm the award of attorney’s fees, but reverse the application of the risk multipli *352 er because we conclude that such a multiplier is not authorized in an inverse condemnation action.
The appellees are the owners of real property located on Northeast 172nd Street in the City of North Miami Beach. They brought an inverse condemnation proceeding because the City eliminated vehicular access to their properties when it constructed raised concrete curbs along the frontage of their properties. The trial court granted partial summary judgment in the property owners’ favor and declared that the City’s action constituted a taking. This decision was previously affirmed by this court. See City of North Miami Beach v. Reed, 749 So.2d 1275 (Fla. 3d DCA2000).
The jury awarded $20,700 to the Reeds and $22,950 to the St. Germaines, plus prejudgment interest and costs. Additionally, they recovered $23,726.52 in expert fees. The City has not challenged these awards, only the subsequent assessment of $96,520 in attorney’s fees. The trial court found that counsel for the homeowners had expended 241.30 hours at an hourly rate of $200 for a sum of $48,260, and found that the appropriate multiplier was 2.0 because the degree of success achieved by the homeowners’ attorney was unlikely at the time the case was initiated.
The Application of a Multiplier
The first issue raised in this appeal is whether the trial court properly utilized the 2.0 multiplier in this inverse condemnation case. To justify the multiplier, the property owners argue that there is no statute applicable to inverse condemnation proceedings which would limit the amount a trial judge may award a prevailing party. Chapter 73, Florida Statutes (1997), which governs eminent domain matters, contains two sections which discuss attorney’s fees. Section 73.091 sets forth the parameters within which to award attorney’s fees. It basically provides that “the petitioner,” which in eminent domain cases is the condemning authority, “shall pay attorney’s fees as provided in s. 73.092.”[1] Section 73.092 provides the criteria to be used to determine the amount of the attorney’s fees award and contemplates that the condemning authority make a written offer by which the “benefits achieved” can be measured.[2] The owners argue that these statutes do not apply because the City was not the petitioner, and no written offer was made because the City took the position that no taking had been effected.
The City, on the other hand, argues that we are bound by Schick v. Dep’t of Agric. and Consumer Servs., 599 So.2d 641, 644 (Fla.1992). In Schick, the Florida Supreme Court denied the application of a *353 contingency risk multiplier and identified chapter 73 as the basis for an attorney’s fee award to a successful inverse condemnation plaintiff. It concluded that “where the legislature has set forth specific criteria for determining reasonable attorney’s fees to be awarded pursuant to a fee-authorizing statute, the trial judge is bound to use only the enumerated criteria.” Id. at 643. It thus held that “in determining the reasonableness of an attorney’s fee award, made pursuant to section 73.091 in an inverse condemnation action, a Rowe contingency risk multiplier should not be utilized.” See also Division of Admin. v. Ruslan, 497 So.2d 1348, 1349 (Fla. 4th DCA 1986)(aeknowledging that “[t]he award of attorneys’ fees in condemnation proceedings is governed by the provisions of sections 73.091-.092, Florida Statutes (1985), rather than Rowe.”).
The owners would have us disregard this clear supreme court precedent because the owners in Schick assumed without question that sections 73.091 and 73.092 applied. It would seem, however, that the parties and the supreme court assumed the applicability of these sections because it is the only logical approach.
The Florida Supreme Court in Schick referred to Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla.1990), in which the court had examined the use of contingency fee multipliers under three basic categories of attorney’s fees cases: 1) public policy enforcement eases; 2) tort and contract claims; and 3) family law, eminent domain, and estate and trust matters. It was only logical and natural to categorize inverse condemnation cases under the rubric of eminent domain, the third category. The Quanstrom court stated: “[ujnder ordinary circumstances, a contingency fee multiplier is not justified in this category, although the basic lodestar method of computing a reasonable attorney’s fee may be an appropriate starting point”. Id. at 835. An argument could be made that inverse condemnation cases should be treated differently than straight condemnation actions because entitlement to a fee is not assured in the former as it is in the latter. Although this argument persuaded two members of the Florida Supreme Court, the majority of the court thought otherwise.
While we agree that the provisions in chapter 73 were drafted with condemnation cases in mind, other decisions besides Schick have applied them to inverse condemnation actions. The Florida Supreme Court did not hesitate to apply chapter 73 in an inverse condemnation case with respect to appellate attorney’s fees. See Dep’t of Trans. v. Gefen, 636 So.2d 1345, 1347 (Fla.1994)(stating that “[t]he statute [section 73.131(2), as part of chapter 73 that deals with eminent domain cases] was obviously enacted in contemplation of condemnation actions brought by the State. In the interest of fairness, it has been construed to include successful inverse condemnation actions.”). See also State Road Dept. v. Lewis, 190 So.2d 598, 600 (Fla. 1st DCA 1966) (affirming the award of attorney’s fees because it would be absurd for the Department to be liable for fees if it instituted an eminent domain action, but escaped liability if it unlawfully appropriated a citizen’s property without instituting such an action).
Section 73.092(2) states:
(2) In assessing attorney’s fees incurred in defeating an order of taking, or for apportionment, or other supplemental proceedings, when not otherwise provided for, the court shall consider:
(a) The novelty, difficulty, and importance of the questions involved.
(b) The skill employed by the attorney in conducting the cause.
*354 (c) The amount of money involved.
(d) The responsibility incurred and fulfilled by the attorney.
(e) The attorney’s time and labor reasonably required adequately to represent the client in relation to the benefits resulting to the client.
(f) The fee, or rate of fee, customarily charged for legal services of a comparable or similar nature.
(g) Any attorney’s fee award made under subsection (1).
When section 73.092(2) applies, application of the Rowe risk multiplier is inappropriate to determine the attorney’s fee award because the statute sets forth the statutory factors to consider in an inverse condemnation action.
Even if chapter 73 did not govern, we would have concerns about the application of the multiplier because the trial court did not sufficiently articulate the criteria enumerated in rule 4-1.5 of the Rules Regulating the Florida Bar and Rowe in its determination of the reasonableness of the attorney’s fee award and did not set forth specific findings to support the application of the fee multiplier. In its final order awarding attorney’s fees, the trial court only addressed three of the factors to be considered: (1) the experience, skill and expertise of attorney John C. Lukács, attorney for the property owners; (2) the difficulty of the case in consideration of the City’s stern position that they were not liable for any damages whatsoever and of the liability and damage issues involved in the case; and (3) the considerable amount involved from the standpoint of the property owners, as well as the significant responsibility attorney Lukács undertook and fulfilled. The order does not mention other factors, such as the “novelty,” “complexity” and “difficulty” of the questions involved, and the “skill requisite to perform the legal service properly;” the “likelihood” that the lawyer’s employment would “preclude” that lawyer from other employment; the fee that is “customarily charged in the locality for similar legal services;” the “nature and length of the professional relationship with the client;” and whether the fee is “fixed or contingent.” See also Rowe, 472 So.2d at 1150.
Thus, we conclude that the application of the Rowe risk multiplier is inapplicable under these circumstances.
The Limitation on the Fee Award
The City has also challenged the amount awarded because it was not based on a percentage of the benefits achieved. The City argues that the benefits achieved percentage should be calculated as the difference between the ultimate recovery and a “zero” settlement offer, because it made no offer to settle.
In eminent domain proceedings, the condemning authority generally tenders a settlement offer because the condemning authority acknowledges that there has been a taking from the outset. In such cases, under section 73.092(l)(a), the condemning authority would preserve its statutory right to limit an attorney’s fee award. On the other hand, when an authority, like the City in this case, defends an inverse condemnation action, it undertakes the position that the City’s actions did not constitute a taking.
Section 73.092(1) provides the measure to set an award of fees “based solely on the benefits achieved for the client.” Section 73.092(l)(a) calculates that fee based on the difference between the final result and the condemning authority’s last written offer. The plain language of section 73.092(l)(a) thus establishes a written offer as a prerequisite to the application of section 73.092(1). See State Dep’t of Transp. v. Smithbilt Indus., Inc., 715 So.2d 963, 966 (Fla. 2d DCA 1998) (“The definition of ‘benefits’ in subsection (l)(a) unquestionably requires that the condemn *355 ing authority make a written settlement offer.”). Section 73.092(1), however, does not provide a method to calculate a fee award when the condemning authority fails to make a written offer. We thus conclude that a written offer is mandated to award attorney’s fees based solely on the “benefits achieved” under section 73.092(1) and hold that a limitation on the fee award is inappropriate to inverse condemnation cases where the condemning authority makes no written offer.
In this inverse condemnation case, there is no written offer. Attorney’s fees must thus be awarded under the enumerated factors set forth in section 73.092(2), applicable to supplemental proceedings.
We therefore affirm the attorney’s fee award, reverse the multiplier-enhanced portion of the award, and remand the cause with directions to award attorney’s fees in the amount of $48,260.
Affirmed in part and reversed in part, and remanded.

. Costs of the proceedings.—
(1) The petitioner shall pay attorney's fees as provided in s. 73.092 as well as all reasonable costs incurred in the defense of the proceedings in the circuit court, including, but not limited to, reasonable appraisal fees and, when business damages are compensa-ble, a reasonable accountant's fee, to be assessed by that court.

. Specifically, section 73.092(1) provides, in pertinent part:
Attorney's fees. — •
(1) Except as otherwise provided in this section, the court, in eminent domain proceedings, shall award attorney's fees based solely on the benefits achieved for the client.
(a) As used in this section, the term 'benefits’ means the difference, exclusive of interest, between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney. If no written offer is made by the condemning authority before the defendant hires an attorney, benefits must be measured from the first written offer after the attorney is hired.