COHEN, J.
Orlando/Orange County Expressway Authority (“OOCEA”) appeals a final judgment awarding attorney’s fees in the amount of $816,000 in an eminent domain proceeding. The primary issue on appeal concerns the lower court’s refusal to limit attorney’s fees awarded to the landowners to those permitted by section 73.092(1), Florida Statutes (2006), based on a pre-suit offer made by OOCEA. Because the issue involves the public interest, three amicus briefs have been filed in this action.[1] We reverse.
OOCEA was involved in the construction of a project known as the John Land Apopka Expressway.[2] This project was years in development and would have been widely known among the landowners impacted. OOCEA commenced a condemnation proceeding to acquire 9.81 acres of land identified as “Parcel 406” as part of the construction of the expressway. The owner of record was Joseph B. Doerr, as Trustee of The Joseph B. Doerr Revocable Living Trust dated 9/9/94 (“Doerr”).
On June 5, 2006, OOCEA made a pre-suit written offer to the known fee owner, Doerr, to “purchase Parcel 406 for $4,914,221.00, subject to all apportionment claims.” (Emphasis added). At the time of the offer, the property was occupied by Florida Container Services, Inc. (“Florida Container”), which leased the property on a month-to-month basis. In December 2005, Doerr had conveyed fifteen percent of the Trust’s interest in the subject property to Ministry Systems, Inc. (“Ministry”); however, the transfer was not recorded until July 31, 2006. The offer was not accepted by Doerr, and OOCEA filed suit to condemn the property in August 2006.
All parties agreed to a stipulated order of taking, which granted OOCEA immediate possession of the property but allowed Florida Container to remain on the property through January 5, 2007, provided certain conditions were met. Doerr and Ministry (collectively “Landowners”), the Appellees herein, filed a motion to withdraw the funds deposited by OOCEA. Their motion was uncontested and *412 $4,712,883.32 was paid to Landowners, representing the good faith deposit less outstanding ad valorem taxes. In their motion, Landowners represented that they were the only parties of interest in the parcel, other than the Orange County Tax Collector. Doerr received eighty-five percent of the distribution and Ministry received fifteen percent, in accordance with the ownership percentages outlined in Ministry’s quitclaim deed.
Florida Container separately pursued its claims against OOCEA. Its claim was settled at mediation, and a stipulated final judgment entered on March 22, 2007, required OOCEA to pay the tenant $45,000, which was reported to represent compensation for any and all of the company’s claims.[3]
Landowners’ stipulated order of taking did not resolve the value of Parcel 406. In July 2007, OOCEA apparently made a collective offer of judgment to Landowners in the amount of $5,500,000.[4] The offer was not accepted by Landowners, and the compensation issue was tried before a jury in February 2008, approximately one year after Florida Container’s settlement. The jury found that Parcel 406 had a fair market value of $5,744,830.
Landowners were represented by the law firm of Fixel, Maguire & Willis (“FMW”). Both clients had virtually identical fee agreements with FMW that recognized the firm would be paid “statutorily calculated Attorney’s fees” by the condemning authority, plus a bonus of two percent of the award by Landowners if the award exceeded $5 million. The two-percent bonus, which totaled $117,861, was paid to FMW from the proceeds of the final payment made to Landowners. Following entry of the verdict, Landowners filed a separate motion to recover their “statutory” fees and/or any fees permitted by article X, section 6, of the Florida Constitution.
OOCEA sought to limit attorney’s fees to those permitted by section 73.092(1), Florida Statutes (2006), which requires the court to award fees “solely on the benefits achieved for the client.” Id. (emphasis added). Landowners argued they were entitled to the more generous “reasonable” attorney’s fees allowed by section 73.092(2), and/or the Florida Constitution. The issue was brought before the court on a motion filed by Landowners to preclude application of section 73.092(1). The trial court ultimately agreed with Landowners that section 73.092(1) could not be used to award fees in this case, but that fees should be awarded pursuant to the “reasonable fee” provision of section 73.092(2), using the factors set forth in the statute. As part of its ruling, the court rejected OOCEA’s argument that Landowners had waived the right to challenge an award of fees under the “benefits achieved” provisions of section 73.092(1). It further found that FMW’s fee agreement, which obligated the firm to accept “statutory” fees, did not limit it to fees pursuant to section 73.092(1). OOCEA’s argument that the separate bonus already paid to FMW must be deducted from any fee award was mooted by FMWs agreement to return the bonus to its clients. Because section 73.092(1) was found inapplicable, the trial judge did not reach Landowners’ argument that application of the statute would be unconstitutional under the facts and circumstances existing in this case.
*413 At a hearing to determine the amount of fees to be awarded for both the valuation proceedings and supplemental proceedings, it became apparent that both sides had over-litigated the case, and each blamed the opposition for the oversized fees. For the valuation proceedings, FMW claimed it was entitled to be paid for 2,700.3 attorney hours at the rate of $350 or $375 per hour, and 460 paralegal hours at the rate of $120 per hour. Nearly 2,000 of the attorney hours pertained to services performed by Landowners’ lead counsel, who did not keep contemporaneous time records but reconstructed his time after the conclusion of the litigation. The court awarded Landowners a total of $816,000 as attorneys’ fees for the valuation proceedings and $194,000 relating to the supplemental proceedings. They were also awarded expert fees and costs of $277,422, plus $19,000 in reimbursements. The fees collected by OOCEA’s attorneys were similarly sizable.[5]
OOCEA has now appealed the fees awarded to Landowners for the “valuation” portion of the proceedings.[6] OOCEA argues that Landowners should have been limited to an award of attorney’s fees pursuant to subsection (1) of section 73.092. The statute instructs the court that, “except as otherwise provided in this section and section 73.015,” the sole factor to consider in awarding fees in an eminent domain proceeding is the “benefits achieved” for the client. § 73.092(1), Fla. Stat. Fees are calculated as a percentage of the “benefits achieved.” § 73.092(l)(c), Fla. Stat. The attorneys are entitled to thirty-three percent of any benefit up to $250,000, twenty-five percent of a benefit between $250,000 and $1 million, and twenty percent of any benefit exceeding $1 million. § 73.092(l)(c), 1.-3., Fla. Stat. ■
Subsection (1) of section 73.092 must be compared with subsection (2) of the same statute, which applies to “attorney’s fees incurred in defeating an order of taking, or for apportionment, or other supplemental proceedings, when not otherwise provided for....” § 73.092(2), Fla. Stat. The subsection instructs the court that, with respect to these fees, the court is to consider a list of factors in making the award, which appear to be directed at producing a “reasonable fee.” The factors to be considered include: (1) the novelty, difficulty, and importance of the questions involved; (2) the skill employed by the attorney in conducting the cause; (3) the amount of money involved; (4) the responsibility incurred and fulfilled by the attorney; (5) the attorney’s time and labor reasonably required adequately to represent the client in relation to the benefits resulting to the client; (6) the fee, or rate of fee, customarily charged for legal services of a comparable or similar nature; and (7) any attorney’s fee award made under subsection (1). § 73.092(2)(a)-(g), Fla. Stat.
Read together, these subsections appear to contemplate two forms of fees awards in condemnation cases. Attorney’s fees for valuation proceedings are to be awarded using the “benefits achieved” formula of subsection (1), while “reasonable fees” are available under subsection (2) for fees incurred in supplemental proceedings, such as apportionment proceedings between landowners. The statute nonetheless appears to contain a “gap.” See Sarasota Cnty. v. Curry, 861 So.2d 1239 (Fla. 2d *414 DCA 2003); Fla. Dep’t of Transp. v. Smithbilt Ind., Inc., 715 So.2d 963 (Fla. 2d DCA 1998). The gap arises because section 73.092(1) requires a condemning authority to make a written offer to a landowner, before its limiting provisions can come into play, due to the definition of “benefits achieved” set forth in the statute. The definition states:
(a) As used in this section, the term “benefits” means the difference, exclusive of interest, between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney. If no written offer is made by the condemning authority before the defendant hires an attorney, benefits must be measured from the first written offer after the attorney is hired.
§ 73.092(l)(a), Fla. Stat. (emphasis added). Moreover, section 73.092(2) is limited by its terms to fees incurred “in defeating an order of taking and in supplemental proceedings, when fees are not otherwise provided for.” The gap occurs with respect to fees incurred in valuation proceedings, when no written offer is made. Curry, 861 So.2d at 1242 (explaining “section 73.092 contains a ‘gap’ by failing to provide a method for calculating attorney’s fees in cases in which the benefits analysis is not applicable and the proceeding is not a supplemental one.”); Smithbilt, 715 So.2d at 966 (stating “the statute contains a gap because it contains no method to establish fees in the event that the condemning authority makes no written offer and the proceeding is not supplemental in nature.”). As to these cases, courts have determined that fees should be awarded pursuant to subsection (2), even though the statute does not appear to apply by its terms. See, e.g., Curry, 861 So.2d at 1242.[7]
The dispute in this case over the application of section 73.092(1) centers on whether a valid written offer was made to Landowners, so as to permit the lower court to ascertain the “benefits achieved” by Landowners under section 73.092(1), when measured against the final verdict of $5,744,830. OOCEA, of course, argues that a valid written offer was made. It primarily relies on a pre-suit written offer it made to Doerr on June 5, 2006, to “purchase Parcel 406 for $4,914,221.00, subject to all apportionment claims.” The trial court struck the offer for purposes of the statute, finding it “insufficiently certain and/or definite,” and accepted Landowners’ argument that the offer was insufficient to permit the court to calculate the “benefits achieved” by each defendant in the final judgment, so as to permit a fee award under section 73.092(1). The lower court found that Landowners were entitled to an award of reasonable attorney’s fees pursuant to section 73.092(2).
OOCEA argues in this appeal that the only “written offer” required by section 73.092(1) is a written offer to Landowners for the entire fee, and that the statute cannot be construed to require it to separately state the interests of each individual condemnee, as this conflicts with the pre-suit offer requirements imposed on condemning authorities by section 73.015, Florida Statutes (2006). OOCEA theorizes that the pre-suit written offer made to Doerr on June 5, 2006, to “purchase Parcel 406 for $4,914,221.00, subject to all apportionment claims,” constituted a written offer for purposes of section 73.092(1), that simply made clear the offer was intended *415 to cover all who held an interest in the property.
Landowners agree that the offer in this case was a “unified” offer for the entire fee, despite the limiting language that it was subject to apportionment. As such, Landowners contend that the offer did not meet the requirements of section 73.015, which requires the condemning authority to “provide a written offer of compensation to the fee owner as to the value of the property sought to be appropriated .... ” § 7S.015(l)(b), Fla. Stat. In opposition to Florida’s “unity rule,” Landowners insist that the offer required by section 73.015(l)(b) is an offer for the value of the fee owner’s interest, exclusive of the leasehold or other interests of third parties in the fee. Regardless, they contend that the offer that was made cannot be used as the basis of a “benefits achieved” fee award under section 73.092(1). They insist that because of the failure to specify a dollar amount for the Landowners’ interests, as distinguishable from those of Florida Container, the “benefits achieved” by Landowners in the valuation proceedings cannot be calculated, precluding a fee award pursuant to section 73.092(1).
We reject the argument that section 73.015, the pre-suit offer statute, contemplates a separate offer to a fee owner for the value of his or her property excluding other interests. A lessee is plainly an “owner” of property protected by the constitutional guarantee in article X, section 6(a) of the Florida Constitution against the taking of private property without just compensation. Trump Enters., Inc. v. Publix Supermkts., Inc., 682 So.2d 168, 169 (Fla. 4th DCA 1996). However, Florida follows the “unity rule” or “undivided fee rule.” Fla. Dep’t of Transp. v. Powell, 721 So.2d 795, 797 n. 2 (Fla. 1st DCA 1998); Div. of Admin., Fla. Dep’t of Transp. v. Allen, 447 So.2d 1383, 1385-86 (Fla. 5th DCA 1984). The rule requires the jury in an eminent domain proceeding to value the property as a whole, irrespective of the interests held in the parcel. The trial court then determines in a summary, supplemental proceeding the portion to be awarded to all interested parties, including lessees. Allen, 447 So.2d at 1385-86; accord Porter v. Columbia Cnty., 75 So.2d 699 (Fla.1954); see also Carter v. State Rd. Dep’t, 189 So.2d 793, 794 n. 1 (Fla.1966) (stating a leasehold is encompassed within property being appropriated and must be included in valuing the property as a whole).
Section 73.015 was added to the eminent domain statutes in 1999 as part of a legislative overhaul of the eminent domain process and appears to be consistent with the unity rule. See Ch. 99-385, § 57, at 56, Laws of Fla. (effective Jan. 1, 2000). It requires the condemning authority to “negotiate in good faith with the fee owner of the parcel to be acquired,” and to make an “attempt to reach an agreement concerning the amount of compensation to be paid for the parcel.” § 73.015(1), Fla. Stat. (emphasis added). Among other things, it requires the condemning authority to “provide a written offer of compensation to the fee owner as to the value of the property sought to be appropriated.” § 73.015(l)(b), Fla. Stat. (emphasis added). This is consistent with section 73.071, which requires the jury during the “compensation” portion of the proceedings to determine, among other things, the “value of the property sought to be appropriated.” § 73.071(3)(a), Fla. Stat.
The pre-suit offer made to Doerr was, in fact, a unified offer which included the value of the entire fee.[8] By definition, it *416 included amounts for Florida Container’s interest in the property. Allen, 447 So.2d at 1385-86. The leasehold was, at best, minimally compensable because it was a month-to-month lease terminable upon condemnation of the property.[9] However, the company had a right to compensation for its trade and other fixtures under both the common law and the lease, because a condemnation clause is generally held not to affect a claim for non-removed fixtures. 2 Nichols on Eminent Domain § 5.02[6][f] (3d ed. 2006).[10]
Despite the unified offer made in this case, we reject Landowners’ argument that OOCEA’s pre-suit offer does not permit an award of fees based on the “benefits achieved ” by Landowners, as required by section 73.092(1). The statute initially defines “benefits” to mean “the difference, exclusive of interest, between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney.” § 73.092(l)(a), Fla. Stat. The obvious purpose of the statute is to compute the financial benefits achieved by a condemnee in going to trial, as calculated by subtracting an early written offer made by the condemning authority from the amount ultimately awarded by the jury or accepted in settlement by the condemnee. Fees are to be calculated against this amount.
We specifically reject the argument that making the written offer “subject to apportionment” rendered it too indefinite for use in determining the benefits achieved by Landowners. The “subject to apportionment” language was obviously included in an attempt to limit the condemning authority’s liability.[11]
*417 We agree with OOCEA that no apportionment issues exist in this case that would preclude the trial court from calculating the benefits achieved by Landowners. It is clear that all of the “benefits achieved” in this case were attributable to Landowners, and not to the tenant, which settled its claim prior to trial. Moreover, there were no apportionment issues between the two Landowners, whose ownership interests represented a straight eighty-five to fifteen percent division of the entire fee. This means that one hundred percent of the benefits achieved in this case were attributable to Landowners, who were, in any event, represented by the same counsel.[12]
The lack of any apportionment issues clearly distinguishes this case from Curry. There, the court considered an award of fees in an eminent domain proceeding, where a collective offer of judgment of $30,025 had been made to three landowners who owned a single parcel of land. The offer was made six years after suit had been brought. It was accepted by the landowners and final judgment was entered in accordance with the offer. The court accepted the county’s contention that the offer of judgment constituted a “written offer” for purposes of section 73.092(1), but nevertheless found that fees could not be awarded to Curry, one of the landowners, under the subsection. The court con-eluded that it was impossible to determine how much of the joint offer of judgment was attributable to his interest, and it was therefore impossible to determine the “benefits achieved” from his final settlement, which resulted in a payment to him of $7,666.67. The Curry court went on to hold that under the circumstances of the case, fees should be awarded pursuant to section 73.092(2), despite recognition that “[a] plain language reading of that subsection suggests that it would be inapplicable in this case because the underlying action was not a ‘supplemental proceeding.’ ” 861 So.2d at 1242. The court nonetheless felt that application of subsection (2) was necessary in “gap” proceedings “to give effect to the legislature’s intent that the landowner receive attorney’s fees under section 73.092 based on the landowners’ constitutional right to full compensation in eminent domain proceedings.” Id.
The problem outlined in Curry does not exist in this case, because only Landowners went to trial, each landowner’s interest was readily discernible, and both were represented by the same attorneys so there was no need to allocate fees. We do note, however, that the offer of judgment cases, statutes and rules cited by the parties, and seemingly relied upon in Curry, are, for the most part, inapposite, not only because the statutes have changed, but because they involve different considerations.[13] *418 The offer of judgment statutes penalize a litigant for his or her unreasonable rejection of an offer of settlement. In derogation of the common law, they create a right to fees where none otherwise existed when an offer of judgment is unreasonably rejected. These statutes differ substantially from the one involved in the instant case, which limits claimants in a condemnation proceeding to a fee award based on the “benefits achieved.” The statute is not concerned with what was known by a claimant in rejecting an offer of judgment or with the claimant’s ability to evaluate and reject the offer. We reject Landowners attempt to graft a similar analysis as used in the context of Florida’s offer of judgment rule to eminent domain proceedings. The statute focuses solely on whether benefits were achieved.[14] It plainly states that fees for the valuation portion of the proceedings are limited by the benefits achieved on behalf of those who choose to go to trial. Once these fee limits are determined, we see no reason why the trial judge cannot allocate the benefits among those who went to trial, much as he apportions the value of the property during supplemental proceedings.[15] Nonetheless, we leave that issue for another day.
We believe that our construction of section 73.092(1) gives maximum effect to the legislature’s intent to limit fees during the valuation portion of the condemnation proceedings to those derived in achieving benefits on behalf of a landowner. This is our polestar in statutory construction. Larimore v. State, 2 So.3d 101, 106 (Fla.2008) (stating that court’s purpose in construing a statute is to give effect to legislative intent). We also recognize that attorney’s fees statutes must be strictly construed. Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So.2d 276, 278 (Fla.2003). However, the principle is inapplicable in this case, where fees are not awardable against Landowners, but are payable by the authority as part of a condemnee’s constitutional right to full compensation. See Tosohatchee Game Pres., Inc. v. Cent. & S. Fla. Flood Control Dist., 265 So.2d 681, 683 (Fla.1972) (attorney’s fees are part of constitutional right to full compensation).
Because we agree with OOCEA that Landowners’ attorney’s fees are limited in this case to those permitted by section 73.092(1), we remand for further consideration of Landowners’ argument that applying section 73.092(1) to limit the fees sought in this case denies them their constitutional right to full compensation, because the condemning authority caused *419 “excessive litigation.” The judge never reached this argument because he found that Landowners were entitled to reasonable fees pursuant to section 73.092(2).
Finally, our resolution of the issues raised in this case makes it unnecessary for us to consider OOCEA’s argument that the fees awarded to FMW improperly exceeded those agreed to by FMW and Landowners. The fees found to be due here are those which OOCEA argued were payable under the fee agreements.
REVERSED and REMANDED.
EVANDER and JACOBUS, JJ., concur.

. The Florida Association of County Attorneys has submitted an amicus brief on behalf of OOCEA. The Florida Retail Foundation and the Pacific Legal Foundation have submitted amicus briefs in favor of Appellees.

. John Land has been the long-serving mayor of Apopka.

. Its claims included compensation for its leasehold interest, trade fixtures, and moving expenses.

. The offer of judgment is not contained in the record on appeal.

. For the valuation proceedings alone, OOC-EA incurred 2,888 attorney hours and 1,005 paralegal hours, for which it compensated its attorneys a total of $672,000. It was also paid $150,000 for the cost phase of the trial.

. OOCEA does not challenge the fees awarded for the supplemental proceedings.

. The Third District has also determined that fees in inverse condemnation cases, which obviously do not involve a written offer, are governed by section 73.092(2). City of N. Miami Beach v. Reed, 863 So.2d 351, 355 (Fla. 3d DCA 2003).

. There seems to be no real complaint in this case regarding the failure to separate Minis *416 try’s interests from Doerr's.

. See Pensacola Scrap Processors, Inc. v. State Rd. Dep’t, 188 So.2d 38, 41 (Fla. 1st DCA 1966) (holding lessee of property who holds month-to-month tenancy-at-will is entitled to compensation for value of leasehold estate, including the cost of removal of personal property from the lands condemned); but see Fibreglas Fabricators, Inc. v. Kylberg, 799 P.2d 371, 375-76 (Colo.1990) (stating that majority rule is that an automatic termination clause forecloses a lessee from recovering for the value of his unexpired leasehold estate); 2 Nichols on Eminent Domain § 5.02[6][h];-5.02[6][j] (recognizing that month-to-month tenant and/or a tenant-at-will have no property interest that would entitle the tenant to compensation); 26 Am.Jur.2d Eminent Domain § 232 (2011) (recognizing that a mere tenant at will, at sufferance, or from month-to-month is generally not entitled to compensation for the taking of his or her interest).

. A tenant has a claim for permanent fixtures or improvements integrated into a building to the extent that the fixtures or improvements have an enhancing effect upon the market or rental value of the premises. 2 Nichols on Eminent Domain § 5.03[5][c]. Similar, but more extensive, rights exist with respect to trade fixtures. Sweeting v. Hammons, 521 So.2d 226 (Fla. 3d DCA 1988); 4 Nichols at § 5.03[5][c];-13.09[2].

. There is some doubt that this language can be used to successfully limit the condemning authority’s liability. The Fourth District Court of Appeal has held that a landowner (e.g., fee owner) does not have the power to negotiate on behalf of other owners, which renders apportionment language useless. This means that the condemning authority can be required to pay separate compensation to any claimant not a party to the settlement, even when the settlement states it is "subject to apportionment.’’ See Sunshine Props., L.L.C. v. Fla. Dep't of Transp., 900 So.2d 714 (Fla. 4th DCA 2005) (holding that written settlement with fee holder, which stated that it was subject to claims for appointment, if any, did not require fee holder to compensate tenant for its leasehold interest and trade fixtures, although these were included in the offer, since tenant had not joined in the settlement and had not had the opportunity to advocate its own interests); see also Tilden Groves Holding Corp. v. Orlando/Orange County Expressway Auth., 816 So.2d 658 (Fla. 5th DCA 2002) (refusing to set aside a settlement reached by a condemning authority with a landowner, which the condemning authority believed included compensation for the ten *417 ant's interest, although no limiting language was contained in settlement and tenant was not a party to settlement).

. In this case, the total compensation paid for the property was $5,789,830. OOCEA's first written offer to Doerr (and the last before it hired an attorney) was the pre-suit offer of June 5, 2006, to "purchase Parcel 406 for $4,914,221, subject to all apportionment claims.” The difference between these two figures represents the "benefits achieved” by Landowners in going to trial.

. See Allstate Indem. Co. v. Hingson, 808 So.2d 197 (Fla.2002), (holding that an offer of settlement made by a defendant to multiple plaintiffs had to state the amount and terms attributable to each plaintiff; court said, among other things, separate offers were necessary for each party to evaluate the offer as it pertains to him or her); Hartleb v. Fla. Dep’t of Transp., 677 So.2d 336, 337 (Fla. 4th DCA 1996) (holding that offer of judgment made to fee owner under statutes and rules no longer applicable did not cut off fee owner’s right to fees because offer did not state it was being made free and clear of the tenant’s claims and *418 because, in any event, condemning authority had made substantial changes to the construction plans and design, which decreased the scope of the taking, thereby reducing the amount awarded to landowner at trial).

. Of course, the "unified” offer contemplated by section 73.015 is addressed only to "fee holders,” and not to those with possessory interests, such as tenants, and therefore serves as a "written offer” only to the fee holders.

. It may be that adjustments to the fees awarded are necessary in those cases in which the "benefits achieved” are more attributable to one patty than another. Suppose, for example, a condemning authority offers $1 million for property, but finds no value in certain claims made by tenant regarding value of fixtures, which the condemning authority says are worthless. If the tenant is able to prevail at trial, and the jury awards an additional $500,000, due mostly to the tenant's claims, it may not be fair to split the fees solely on the basis of each party’s final percentage of the overall recovery. Instead, the tenant should be permitted to introduce evidence showing that he or she was responsible for the "benefits achieved.” This may take the form of evidence showing the value placed on the tenant's interest by the condemning authority during pre-suit negotiations.