# Supreme Court of Florida

_____

No. SC14-1007
_____

**JOSEPH B. DOERR TRUST, et al.,**
Petitioners,

vs.

**CENTRAL FLORIDA EXPRESSWAY AUTHORITY, et al.,**
Respondents.

[November 5, 2015]

LEWIS, J.

This case is before the Court for review of the decision of the Fifth District Court of Appeal in Orlando/Orange County Expressway v. Tuscan Ridge, LLC (Tuscan Ridge II), 137 So. 3d 1154 (Fla. 5th DCA 2014). In the decision, the district court ruled upon a question that it certified to be of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.

## FACTS AND BACKGROUND INFORMATION

### Introduction

Article X, section 6, of the Florida Constitution governs eminent domain. Subsection (a) of that provision states that "[n]o private property shall be taken

except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner."

This case involves an award of attorney's fees in an eminent domain proceeding. The award of such fees is governed by section 73.092, Florida Statutes (2014),[1] which provides, in pertinent part:

> (1) Except as otherwise provided in this section and s. 73.015, the court, in eminent domain proceedings, shall award attorney's fees based solely on the benefits achieved for the client.
>
> > (a) As used in this section, the term "benefits" means the difference, exclusive of interest, between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney. If no written offer is made by the condemning authority before the defendant hires an attorney, benefits must be measured from the first written offer after the attorney is hired.
> > . . . .
> >
> > (b) The court may also consider nonmonetary benefits obtained for the client through the efforts of the attorney, to the extent such nonmonetary benefits are specifically identified by the court and can, within a reasonable degree of certainty, be quantified.
> > (c) Attorney's fees based on benefits achieved shall be awarded in accordance with the following schedule:
> >
> > > 1. Thirty-three percent of any benefit up to $250,000; plus
> > > 2. Twenty-five percent of any portion of the benefit between $250,000 and $1 million; plus

---

1. The statute has not been amended since the condemnation proceeding in this case commenced in 2006.

3. Twenty percent of any portion of the benefit exceeding $1 million.

(2)  In assessing attorney's fees incurred in defeating an order of taking, or for apportionment, or other supplemental proceedings, when not otherwise provided for, the court shall consider:

(a)  The novelty, difficulty, and importance of the questions involved.

(b)  The skill employed by the attorney in conducting the cause.

(c)  The amount of money involved.

(d)  The responsibility incurred and fulfilled by the attorney.

(e)  The attorney's time and labor reasonably required adequately to represent the client in relation to the benefits resulting to the client.

(f)  The fee, or rate of fee, customarily charged for legal services of a comparable or similar nature.

(g)  Any attorney's fee award made under subsection (1).

(3)  In determining the amount of attorney's fees to be paid by the petitioner under subsection (2), the court shall be guided by the fees the defendant would ordinarily be expected to pay for these services if the petitioner were not responsible for the payment of those fees.

## Tuscan Ridge I

The Orlando-Orange County Expressway Authority, now the Central Florida Expressway Authority (the Authority),[2] began a condemnation proceeding to acquire 9.81 acres of land identified as Parcel 406.  Orlando/Orange Cnty.

---

2.  See ch. 2014-171, § 3, Laws of Fla. (amending section 348.753, Florida Statutes, to redesignate the Orlando-Orange County Expressway Authority as the Central Florida Expressway Authority).

Expressway Auth. v. Tuscan Ridge, LLC (Tuscan Ridge I), 84 So. 3d 410, 411 (Fla. 5th DCA 2012).  Parcel 406 was owned by Joseph B. Doerr, as Trustee of The Joseph B. Doerr Revocable Living Trust dated 9/9/94 (Doerr).  Id.  In December 2005, Doerr conveyed fifteen percent of the Trust's interest in the land to Ministry Systems, Inc. (Ministry), but the transfer was not recorded until July 31, 2006.  Id.

On June 5, 2006, the Authority submitted to Doerr a presuit written offer to purchase Parcel 406 for $4,914,221.  Id.  Doerr rejected the offer, and in August 2006, the Authority filed an action to condemn the property.  Id.[3]  In February 2008, a jury trial was held to determine the value of Parcel 406.  Id. at 412.  The jury found that the land had a fair market value of $5,744,830.  Id.

Thereafter, Doerr and Ministry (collectively the Landowners) filed a motion for attorney's fees.  Id.  The Authority sought to limit the fees to the benefits achieved formula under section 73.092(1), which generated an award of $227,652.25.  Id.  On the other hand, the Landowners asserted that they were entitled to attorney's fees under section 73.092(2), which requires a trial court to consider qualitative and quantitative factors in determining the amount of a fee

_____

3. At the time of the presuit offer, a company named Florida Container Services, Inc. (Florida Container), was leasing the property on a month-to-month basis.  Id.  Any claims Florida Container pursued against the Authority were settled at mediation, see id. at 412, and that entity is not part of this case.

award.  Id.  The trial court awarded fees under subsection (2) because it concluded that the Authority's presuit written offer was insufficient to calculate the benefits achieved by each Landowner in the final judgment so as to permit a fee award under subsection (1).  Id. at 414.  Applying the factors listed in section 73.092(2), the trial court awarded the Landowners $816,000 in attorney's fees for the proceedings that involved the valuation of Parcel 406.  Id. at 412-13.

The Fifth District Court of Appeal reversed.  Id. at 411.  The district court concluded that the presuit offer was not so indefinite that the benefits achieved by the Landowners could not be determined.  Id. at 416.  In its decision, the Fifth District noted that this case had been over-litigated, and the parties blamed each other for the significant attorney's fees incurred:

> For the valuation proceedings, [the Landowners' law firm] claimed it was entitled to be paid for 2,700.3 attorney hours at the rate of $350 or $375 per hour, and 460 paralegal hours at the rate of $120 per hour.  Nearly 2,000 of the attorney hours pertained to services performed by [the] Landowners' lead counsel . . . .  The fees collected by [the Authority's] attorneys were similarly sizable. [n.5]
>
>> [N.5.]  For the valuation proceedings alone, [the Authority] incurred 2,888 attorney hours and 1,005 paralegal hours, for which it compensated its attorneys a total of $672,000.  It was also paid $150,000 for the cost phase of the trial.

Id. at 413.  Although the Fifth District concluded that the attorney's fees for the valuation proceedings were limited to those allowed by section 73.092(1), it remanded to the trial court for consideration of the Landowners' claim that the

application of the benefits achieved formula violated their constitutional right to full compensation because the Authority caused excessive litigation.  Id. at 418-19.

**Tuscan Ridge II**

On remand from the Fifth District, the trial court found that the Authority had engaged in a "clear pattern" of excessive litigation.  The first source of excessive litigation was described as follows:

> Early on in these proceedings, after the Order of Taking was entered in August of 2006, [the Authority] made a decision to aggressively litigate this case to the potential detriment of [the Landowners'] right to full compensation.  Previously, the parties had agreed as to the highest and best use of the property, each side had a real estate appraiser to value the property as though vacant, and had agreed to try the case in early 2007.  [The Authority] retained an economist, Henry Fishkind.  [The Authority] then submitted Fishkind's report in late November of 2006.
>
> In his November 2006 report, Fishkind employed an economic development approach to value the Doerr property based upon a hypothetical redevelopment of the property, although the property had been appraised by both parties' property appraisers as though vacant. Using the development approach, Fishkind made 16 assumptions (e.g., the maximum square footage of buildings that could be built on the Doerr property; the cost of constructing such buildings; rental rates for buildings; vacancy rates for such buildings; insurance costs for such buildings; utility costs for such buildings; and real estate taxes for such buildings).  The most important assumption was that 56,800 square feet of improvements was the maximum amount of building space that could be built on the property.  Fishkind relied on other sources as well in making his assumptions which formed the predicate underlying his analysis.
>
> To competently represent [the Landowners], it was necessary for [their] attorneys to determine and then rebut any faulty assumptions of Fishkind.  In order to do so it was necessary for [the

- 6 -

Landowners] to retain additional expert witnesses and request further services of previously retained experts to challenge Fishkind's faulty assumptions. Challenging Fishkind's assumptions greatly increased the number of hours [the Landowners'] attorneys spent on the case.

[The Landowners'] efforts to have Fishkind stricken as a witness throughout the pre-trial period to avoid unnecessary excessive litigation were vigorously contested by [the Authority]. Fishkind was ultimately not allowed to testify before the jury due to a ruling made by the Court.

The trial court also found that the Authority caused excessive litigation by spending twice as much time deposing the Landowners' experts as the Landowners spent deposing the Authority's experts.

The trial court noted that all of the attorney's fees expert witnesses who testified as to what would constitute a reasonable fee, including the Authority's expert, agreed that it would be unreasonable, given the circumstances of this case, to limit the Landowners to the $227,652.25 capped fee that the benefits achieved formula in section 73.092(1) generated.[4] The court explained:

Applying this Court's conclusion that $350 an hour is a reasonable rate to such a fee would mean that [the Landowners] could only expend 650 attorney hours and no paralegal hours to defend its claim against [the Authority], whose attorneys expended 2,888 hours, and paralegal hours of 1005, for a total of 3,893 hours (for which they were paid $672,000). [The Landowners] could not have litigated on an equal footing with [the Authority] under the circumstances of this

_____

4. The trial court stated that a second expert for the Authority did not offer an opinion on this issue because his testimony was limited to "what the reasonable number of hours were for a whole-take case in which one disregards the particular facts of the litigation."

case, if [the Authority] was permitted to expend more than five (5) times the number of hours than [the Landowners].

The trial court held that section 73.092(1) was unconstitutional as applied under the facts of this case because it operated to deny the Landowners their right to full compensation. The court found that the Landowners reasonably incurred 2,200 attorney hours and 400 paralegal hours through the entry of final judgment. It then determined that the original fee award of $816,000:

> remains valid and applicable to the facts and circumstances of this case, based upon a property owner's constitutional right to full compensation. This is especially true since it was [the Authority] that was primarily responsible for the excessive litigation because of its decision to use Fishkind.

The court noted that in determining the fee, it had considered and applied the factors delineated in sections 73.092(2) and (3).

On appeal, the Fifth District again reversed. Tuscan Ridge II, 137 So. 3d at 1155. The district court noted that the $227,652.25 fee award under the benefits achieved formula amounted to a blended rate of eighty-seven dollars per hour for attorney and paralegal time, and opined that such a fee did not appear to be "patently unconstitutional." Id. at 1156. The court suggested that the Landowners could have sought sanctions that would have compensated them above the statutory fee. Id. The district court stated that instead of using other mechanisms to address the "purportedly" abusive tactics of the Authority, the Landowners "successfully convinced the trial court to scrap the entire fee formula as

unconstitutional." Id. at 1156.  The Fifth District held that the trial court erred

when it awarded the Landowners $816,000 in attorney's fees and remanded the

case with instructions that judgment in the amount of $227,652.25 be entered.  Id.

at 1157.  However, the district court certified the following question to this Court

as one of great public importance:

> IN AN EMINENT DOMAIN PROCEEDING, WHEN THE
> CONDEMNING AUTHORITY ENGAGES IN LITIGATION
> TACTICS CAUSING EXCESSIVE LITIGATION AND THE
> APPLICATION OF THE STATUTORY FEE FORMULA RESULTS
> IN A FEE THAT COMPENSATES THE LANDOWNER'S
> ATTORNEYS AT A LOWER-THAN-MARKET FEE, WHEN
> MEASURED BY THE TIME INVOLVED, IS THE STATUTORY
> FEE DEEMED UNCONSTITUTIONAL AS APPLIED, ENTITLING
> THE LANDOWNER TO PURSUE A FEE UNDER SECTION
> 73.092(2)?

Id.  For purposes of our review, we rephrase the question as follows:

> IN AN EMINENT DOMAIN PROCEEDING, WHEN THE
> CONDEMNING AUTHORITY ENGAGES IN TACTICS THAT
> CAUSE EXCESSIVE LITIGATION, IS THE BENEFITS
> ACHIEVED FORMULA IN SECTION 73.092(1), FLORIDA
> STATUTES, UNCONSTITUTIONAL AS APPLIED TO
> CALCULATE ATTORNEY'S FEES FOR THE HOURS
> INCURRED IN DEFENDING AGAINST THE EXCESSIVE
> LITIGATION?

## ANALYSIS

### Standard of Review

The determination as to the constitutionality of a statute is reviewed de novo.

Fla. Dep't of Revenue v. City of Gainesville, 918 So. 2d 250, 256 (Fla. 2005).

However, statutes carry a presumption of constitutionality and must be construed whenever possible to achieve a constitutional outcome. Crist v. Fla. Ass'n of Criminal Def. Lawyers, 978 So. 2d 134, 139 (Fla. 2008).

**Eminent Domain and Attorney's Fees**

In clear and direct terms, article X, section 6(a), of the Florida Constitution provides that "[n]o private property shall be taken except for a public purpose and with <u>full compensation</u> therefor paid to each owner or secured by deposit in the registry of the court and available to the owner." (Emphasis supplied.) It is also fundamentally clear that full compensation under the Florida Constitution includes the right to a reasonable attorney's fee for the property owner. Tosohatchee Game Pres., Inc. v. Cent. & S. Fla. Flood Control Dist., 265 So. 2d 681, 684-85 (Fla. 1972); see also JEA v. Williams, 978 So. 2d 842, 845 (Fla. 1st DCA 2008) ("A landowner's constitutional right to full compensation for property taken by the government includes the right to a reasonable fee for the landowner's counsel.").[5]

---

5. The right of private property owners to full compensation in eminent domain proceedings under the Florida Constitution is more expansive than that of the Fifth Amendment to the United States Constitution, which provides that private property shall not be taken for a public use "without just compensation." U.S. Const. amend V. The Supreme Court has held that "just" compensation under the Fifth Amendment does not include attorney's fees. United States v. Bodcaw Co., 440 U.S. 202, 203 (1979); Dohany v. Rogers, 281 U.S. 362, 368 (1930).

In Florida eminent domain proceedings, the goal is to render the private property

owner as whole as possible because:

> the owner of private property sought to be condemned is forced into court by one to whom he owes no obligation, [and] it cannot be said that he has received "just compensation" for his property if he is compelled to pay out of his own pocket the expenses of establishing the fair value of the property, which expenses in some cases could conceivably exceed such value. The plight of the land owner in this situation is well stated by the New York court in [In] Re Water Supply in City of New York, 125 App. Div. 219, 109 N.Y.S. 652, 654[-55 (N.Y. App. Div. 1908)], as follows:
>
>> He does not want to sell. The property is taken from him through the exertion of the high powers of the [state], and the spirit of the Constitution clearly requires that he shall not be thus compelled to part with what belongs to him without the payment, not alone of the abstract value of the property, but of all the necessary expenses incurred in fixing that value. This would seem to be dictated by sound morals, as well as by the spirit of the Constitution; and it will not be presumed that the Legislature has intended to deprive the owner of the property of the full protection which belongs to him as a matter of right.

Dade Cnty. v. Brigham, 47 So. 2d 602, 604-05 (Fla. 1950) (emphasis supplied).

## Section 73.092

The benefits achieved formula set forth in section 73.092 has encroached on

this fundamental right, but has previously withstood a facial constitutional

challenge. In Seminole County v. Coral Gables Federal Savings & Loan Ass'n,

691 So. 2d 614, 614 (Fla. 5th DCA 1997), the Fifth District rejected an assertion

that section 73.092 is unconstitutional because it divests the judiciary of the ability

- 11 -

to determine reasonable attorney's fees for a private property owner.  The district

court held that the Legislature has the authority to establish a sliding-percentage

scale for attorney's fees awards:

> [T]he legislature essentially decided that a percentage of the benefits
> is a reasonable fee [in eminent domain cases], and in Schick[ v.
> Department of Agriculture and Consumer Services, 599 So. 2d 641
> (Fla. 1992)], the supreme court stated that the legislature can enact
> attorney's fees provisions which "it deems will result in a reasonable
> award." Id. at 644.

Id.  at 615.  Subsequent to Seminole County, this Court addressed the benefits

achieved formula in section 73.092(1) and notwithstanding the compromise of

"full compensation" allowed the Florida Legislature to enact "reasonable"

provisions to govern attorney's fees awards in eminent domain proceedings.

Pierpont v. Lee Cnty., 710 So. 2d 958, 960 (Fla. 1998).  Consistent with Pierpont

and Seminole County, and in accordance with the directives of the statute, Florida

courts have awarded attorney's fees pursuant to section 73.092(1) where

subsection (2) has no application.  See, e.g., Dep't of Transp. v. Knaus, 737 So. 2d

1130, 1131 (Fla. 2d DCA 1999); Teeter v. Dep't of Transp., 713 So. 2d 1090,

1091-92 (Fla. 5th DCA 1998); Dep't of Transp. v. LaBelle Phoenix Corp., 696 So.

2d 947, 948 (Fla. 2d DCA 1997).

Nonetheless, although the Legislature may establish reasonable parameters

for the award of attorney's fees in eminent domain proceedings, a statute cannot

operate in a manner to so reduce a fee award that it runs afoul of the constitutional

- 12 -

guarantee that private property owners receive full compensation for a taking of their property.  Indeed, in <u>Pierpont</u> we acknowledged the possibility that section 73.092 could be unconstitutional as applied in certain situations.  710 So. 2d at 961.  While the landowners in <u>Pierpont</u> offered two scenarios, <u>see id.</u> at n.2, we did not indicate that these were the only potential areas for constitutional concern.

**Excessive Litigation in Eminent Domain Proceedings**

We have previously emphasized the importance of fair play in eminent domain proceedings because of the inherent disadvantage to the property owner:

> It must be borne in mind that in a condemnation proceeding the property of the land owner is subject to taking by the condemnor without the owner's consent.  The condemnee is a party through no fault or volition of his own.  Our Declaration of Rights, Section 12, Constitution of the State of Florida, F.S.A., makes it incumbent upon the condemnor to award "just" compensation for the taking.  In view of this constitutional mandate, the awarding of compensation which is "just" should be the care of the condemning authority as well as that of the party whose land is being taken.
>
> Unlike litigation between private parties condemnation by any governmental authority should not be a matter of "dog eat dog" or "win at any cost."  Such attitude and procedure would be decidedly unfair to the property owner.  He would be at a disadvantage in every instance for the reason that the government has unlimited resources created by its inexhaustible power of taxation.  Moreover it should be remembered that the condemnee is himself a taxpayer and as such contributes to the government's "unlimited resources."

<u>Shell v. State Rd. Dep't</u>, 135 So. 2d 857, 861 (Fla. 1961).  Here, the trial court found that it was the Authority which had caused the excessive litigation that operated to the detriment of the Landowners' right to full compensation.

Moreover, the trial court noted that all of the attorney's fees experts who testified as to what would be a reasonable fee, including the expert for the Authority, agreed that given the circumstances of this case, it would be unreasonable to limit the Landowners to the capped fee generated by the formula in section 73.092(1).

We agree with the Landowners that where a condemning authority is responsible for excessive litigation, the application of subsection (1) to limit a fee award places private property owners at a considerable disadvantage because government entities, such as the Authority,[6] possess potentially unlimited resources to allocate to abusive litigation and legal representation. See generally Shell, 135 So. 2d at 861. Further, it is important to note that section 73.092 applies only to attorney's fees for private property owners. Thus, attorneys for government entities can still bill a substantial number of hours and charge substantial fees without the risk of having their fees reduced in any way or subject to a statutory cap or percentage. We conclude that where private property owners are forced to defend against excessive litigation caused by a condemning authority, a mandatory statutory formula that generates a fee award below that which is considered reasonable denies those property owners their right to the full compensation that is guaranteed by the Florida Constitution. Art. X, § 6(a), Fla. Const.; Tosohatchee,

---

6. The Authority is a State agency. See § 348.753(1), Fla. Stat. (2014).

265 So. 2d at 684-85; JEA, 978 So. 2d at 845. Accordingly, without a remedy to protect private property owners under such circumstances, section 73.092(1) would be unconstitutional as applied.

Therefore, to construe section 73.092(1) in a manner that preserves its constitutionality, as we have a duty to do, see Crist, 978 So. 2d at 139, while simultaneously protecting the right of private property owners to full compensation, we hold that when a condemning authority engages in tactics that cause excessive litigation, the trial court shall utilize section 73.092(2) to calculate a reasonable attorney's fee, but only for those hours incurred in defending against the excessive litigation or that portion that is considered to be in response to or caused by the excessive tactics. The remainder of the fee shall be calculated pursuant to the benefits achieved formula delineated in section 73.092(1). The two amounts added together shall be the total fee. This bifurcated calculation strikes a fair balance by ensuring that private property owners receive the full compensation to which they are entitled under the Florida Constitution, without disregarding the legislative directive that attorney's fees for the valuation portion of an eminent domain proceeding are to be calculated using the benefits achieved formula.

We decline to attempt to define with absolute precision each and every element or item that could constitute or be considered excessive litigation in eminent domain cases other than to state it is litigation that diverges from what

- 15 -

both trial courts and the legal community would normally expect in a normal or usual condemnation case with regard to the work performed, theories and evidence advanced, and the number of attorney and paralegal hours expended.[7] The trial courts of this state are in the best position to determine, based on evidence presented and legal experience, whether excessive litigation activity has occurred.

**Application to This Case**

Although the attorneys for the Landowners unquestionably expended a significant number of hours defending against certain litigation tactics, it does not appear that every action taken by the Authority during this entire eminent domain proceeding caused excessive litigation. To the contrary, the trial court referenced two tactics utilized by the Authority, both of which occurred during the case proceedings: (1) the use of Dr. Fishkind, and related evidence, and (2) prolonged deposition times of the Landowners' experts. Nevertheless, the trial court did not attempt to identify the number of hours that the attorneys for the Landowners expended in defending against that portion or those actions that would be in the category of excessive litigation that resulted from the excessive tactics. There was no need for the trial judge to do so at that time because the limits established by this decision were not in place. The trial court concluded that section 73.092(1)

---

7. This definition is sufficiently broad to be applicable to other areas of the law.

- 16 -

was unconstitutional as applied and did not employ the benefits achieved formula to calculate any portion of the attorney's fee award. As a result, 2,200 attorney hours and 400 paralegal hours were multiplied by reasonable hourly rates under section 73.092(2) to obtain an award of $816,000.

We conclude that application of a simple and normal hourly multiplication to calculate the attorney's fee award is inconsistent with the language of section 73.092(1), which provides that "[e]xcept as otherwise provided in this section and s. 73.015, the court, in eminent domain proceedings, shall award attorney's fees based solely on the benefits achieved for the client" (emphasis supplied). To implement our holding today, an evidentiary hearing is required, during which the trial court is to determine the number of hours that were expended by the attorneys and related personnel for the Landowners that corresponds with the excessive litigation conduct caused by the Authority and may be determined to be that portion of the total work performed attributable to the excessive actions of the condemning counsel or party. For solely those hours, the trial court shall calculate a fee pursuant to section 73.092(2). This additional amount shall be added to the amount resulting from the application of section 73.092(1), which must be applied to determine the remainder of the fee based on benefit, which in this case is $227,652.25.

**Sanctions**

The Fifth District criticized the Landowners for their failure to rely on sanctions to secure attorney's fees above the statutory fee. Tuscan Ridge II, 137 So. 3d at 1156. However, we disagree that the Landowners were required to pursue only sanctions and conclude that they are not sufficient to protect the constitutional right at issue here. We reiterate that there is a constitutional right to full compensation for the taking of private property, art. X, § 6(a), Fla. Const., and a reasonable attorney's fee is part of that compensation. Tosohatchee, 265 So. 2d at 684-85; JEA, 978 So. 2d at 845. The award of attorney's fees as a sanction is a discretionary, punitive concept that is completely separate and distinct from this right under the Florida Constitution we consider today.

Additionally, the over-litigation or excessive litigation of a case does not necessarily equate with bad faith or illegal motives. While the trial court found that Dr. Fishkind's valuation of Parcel 406 was based on faulty assumptions that had to be rebutted by the Landowners' attorneys, this does not mean that the Authority acted in bad faith or with evil intent when it retained him. Similarly, the fact that the Authority's attorneys may have been overzealous and spent an inordinate amount of time deposing the Landowners' experts does not lead to an automatic conclusion that the Authority engaged in bad faith conduct or was motivated by improper considerations. Therefore, we reject the contention that the

Landowners were required to pursue sanctions in lieu of challenging the constitutionality of section 73.092(1) as applied where the Authority was responsible for excessive litigation.

## CONCLUSION

Based on the foregoing, we answer the rephrased certified question in the affirmative. We hold that when a condemning authority engages in tactics that cause excessive litigation, section 73.092(2) shall be used separately and additionally to calculate a reasonable attorney's fee for the hours expended which are attributable to defending against the excessive litigation or actions. This will result in an amount that must be added to the remainder of the fee calculated utilizing the benefits achieved formula delineated in section 73.092(1). This is a two-step process that results in a total fee that is based both on benefit and any excessive litigation.

The decision of the Fifth District is quashed. This case is remanded with directions that the trial court conduct an evidentiary hearing to determine the total attorney's fees based on both the benefit and the portion of the work attributable to the excessive litigation and actions.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

Fifth District - Case No. 5D13-1164

(Orange County)

Craig B. Willis and Joe W. Fixel of Fixel & Willis, Tallahassee, Florida; and Major Best Harding of Ausley & McMullen, P.A., Tallahassee, Florida,

for Petitioners

Beverly A. Pohl of Broad and Cassel, Fort Lauderdale, Florida; Richard Nash Milian and Edgar Lopez of Broad and Cassel, Orlando, Florida,

for Respondents