[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-10435 & No. 22-10437

————————————————

SABAL TRAIL TRANSMISSION, LLC,

Plaintiff-Appellant,

*versus*

3.921 ACRES OF LAND IN LAKE COUNTY FLORIDA,
UNKNOWN OWNERS,

Defendants,

SUNDERMAN GROVES, INC,

Defendant-Appellee.

————————————————

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:16-cv-00178-JSM-PRL

_____

Before BRANCH, GRANT, Circuit Judges, and HINKLE,* District Judge.

PER CURIAM:

The Natural Gas Act authorizes private entities who have received a certificate of public convenience and necessity to acquire property "by the exercise of the right of eminent domain." 15 U.S.C. § 717f(h). Sabal Trail Transmission, LLC, invoked this power of eminent domain to acquire easements to build a pipeline on land owned by Sunderman Groves, Inc. In the condemnation proceeding, the district court determined that the Act incorporates state eminent domain law, and it consequently applied Florida law to grant attorneys' fees, costs, and prejudgment interest to Sunderman Groves. Sabal Trail appeals these awards, arguing that the district court should have applied federal law instead.

After this panel heard oral argument, a different panel of our Court decided a nearly identical case that arose out of Sabal Trail's use of the eminent domain power to build this same pipeline. *See Sabal Trail Transmission, LLC v. 18.27 Acres of Land*, 59 F.4th 1158,

_____

* The Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida, sitting by designation.

1160–62 (11th Cir. 2023).  That panel determined that proceedings under § 717f(h) must look to state law to determine the measure of compensation.  *Id.* at 1175.

It is "firmly established" that "each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court."  *United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993).  This Court's prior construction of the Natural Gas Act is now the law in this Circuit, and it conclusively resolves this appeal.  We therefore **AFFIRM** the district court.

22-10435                GRANT, J., Concurring                1

GRANT, Circuit Judge, concurring:

I join the Court's opinion in full. I write separately to respectfully express my disagreement with two other cases—one old and one new.

Decades back, our predecessor court held in *Georgia Power Co. v. Sanders* that the Federal Power Act incorporates state-law standards of compensation for eminent domain proceedings. 617 F.2d 1112, 1113 (5th Cir. 1980) (en banc).[1] Section 21 of that Act delegates "the exercise of the right of eminent domain" to private licensees building dams. 16 U.S.C. § 814. More recently, this Court was asked to interpret a different statute with the same language. The panel in *Sabal Trail Transmission, LLC v. 18.27 Acres of Land* concluded that *Georgia Power* requires us to use the same state-law rules—this time for pipeline construction under the Natural Gas Act. 59 F.4th 1158, 1175 (11th Cir. 2023) (hereinafter referred to as *Thomas*, the name of one of the landowners in that proceeding); 15 U.S.C. § 717f(h).

Like at least one member of that panel, I think *Georgia Power* was wrongly decided. *See* 59 F.4th at 1175 (Jordan, J., concurring). But unlike the panel, I do *not* think that our prior-panel precedent rule required us to extend *Georgia Power*'s incorrect reasoning about the Federal Power Act to the Natural Gas Act. *See id.* at

---

[1] All published cases of the former Fifth Circuit decided before the close of business on September 30, 1981, are precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

2                    GRANT, J., Concurring                    22-10435

1168–69. I write to emphasize that, when facing similar interpretive questions about other statutes, we should not overread or further extend these two precedents—the compensation standards of the Fifth Amendment apply to private delegations of the federal eminent domain power unless Congress says otherwise.[2]

## I.

The Federal Power Act authorizes private licensees to condemn property "by the exercise of the right of eminent domain." 16 U.S.C. § 814. At a glance, that phrase might not seem to specify a standard of compensation. But with a closer look at eminent domain law, the standard becomes clear: when Congress delegates "the exercise of the right of eminent domain" without specifying more, it is granting the original landowners the compensation that is required by the Fifth Amendment.

The Fifth Amendment requires "just compensation" whenever the federal government exercises the power of eminent domain. U.S. Const. amend. V. And a whole body of caselaw has developed explaining exactly what "just compensation" means.

---

[2] The problem's importance is underscored by *Georgia Power*'s influence in other circuits. Two other circuits have copied its flawed analysis when interpreting the Natural Gas Act. *See Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237, 241, 246–55 (3d Cir. 2019); *Columbia Gas Transmission Corp. v. Exclusive Nat. Gas Storage Easement*, 962 F.2d 1192, 1197–99 (6th Cir. 1992). And the Second Circuit has applied the *Georgia Power* framework to the Rail Passenger Service Act. *See Nat'l R.R. Passenger Corp. v. Two Parcels of Land*, 822 F.2d 1261, 1265–67 (2d Cir. 1987).

22-10435                GRANT, J., Concurring                3

For example, "indirect costs to the property owner caused by the taking of his land are generally not part of the just compensation to which he is constitutionally entitled." *United States v. Bodcaw Co.*, 440 U.S. 202, 203 (1979). As a result, "attorneys' fees and expenses are not embraced within just compensation." *Id.* (alteration adopted and quotation omitted).

For better or worse, this Fifth Amendment "just compensation" standard is less generous than what some States offer when they exercise their own eminent domain power. To take the same example, the Florida Constitution—unlike the Fifth Amendment—provides that the condemner must pay the original property owner's attorneys' fees. *Joseph B. Doerr Tr. v. Cent. Fla. Expressway Auth.*, 177 So. 3d 1209, 1215 (Fla. 2015). But *state* laws in no way limit the *federal* eminent domain power; they "do not, and could not, affect questions of substantive right—such as the measure of compensation—grounded upon the Constitution of the United States." *United States v. Miller*, 317 U.S. 369, 380 (1943).

Congress, of course, can always choose to provide more compensation than the Fifth Amendment requires—"just compensation" is a floor, not a ceiling. [3] Congress can even choose

---

[3] The facts of this case demonstrate why, as a matter of policy, Congress might want to do just that. Sunderman Groves's attorneys' fees and costs were over $150,000 greater than the jury award for the easements. And the jury award for the easements was over $250,000 more than Sabal Trail originally offered. In other words, without attorneys' fees and costs, Sunderman Groves would have faced an undesirable choice: (1) entering litigation that ultimately cost

to copy state law standards of compensation.  *See, e.g.*, 33 U.S.C. § 532 (requiring "just compensation" to be "ascertained and paid according to the laws of [the] State" when the power of eminent domain is invoked to build interstate bridges).  But any compensation beyond the Fifth Amendment is "a matter of legislative grace rather than constitutional command."  *Bodcaw*, 440 U.S. at 204.

Those same rules apply when a federal statute authorizes private parties to exercise the right of eminent domain on behalf of the federal government.  "For as long as the eminent domain power has been exercised by the United States, it has also been delegated to private parties."  *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2255 (2021).  And whether the federal government itself or a private licensee is exercising the federal eminent domain power, the power is the same.  *See id.* at 2257.

Putting all of this together: when a federal statute authorizes "the exercise of the right of eminent domain," without saying more, the statute authorizes only the compensation required by the Fifth Amendment—regardless of whether the United States or a private licensee exercises that power.  Courts can only require additional compensation when the text shows that Congress granted it.  *See Bodcaw*, 440 U.S. at 204.

---

more money than it was worth or (2) taking a dramatically underpriced offer for the easements.  That might not violate the Fifth Amendment, but it still raises serious fairness concerns.

*Georgia Power* took a completely different approach when interpreting the Federal Power Act. It said that the statute's text did "not specify" whether state or federal law governed the question of compensation, which left the Court to "the task of interstitial federal lawmaking." *Ga. Power*, 617 F.2d at 1115. So the Court made federal common law. There was no question that the source of the eminent domain power was federal, and that the statute required a federal rule of decision. *See id.* But though *Georgia Power* stylized its analysis as preferring state substantive law to federal common law, it actually supplemented a federal statute with a new common-law rule: it replaced the compensation standard Congress set for a private delegation of the *federal* eminent domain power with standards from *state* laws that limited the *state* governments' exercise of the *state* eminent domain power. *See id.* at 1115–16, 1124.

By imposing state rules where federal law already provided a standard, *Georgia Power* improperly expanded federal common law. That assertion of judicial authority is justified only when a federal court is "compelled to consider federal questions which cannot be answered from federal statutes alone." *City of Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981) (quotation omitted). Such instances are "few and restricted"—essentially limited to cases in which a statute lacks a necessary rule of decision. *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640–41 (1981) (quotation omitted); *City of Milwaukee*, 451 U.S. at 314. Even then, federal common law is appropriate only where it is "necessary to protect uniquely federal interests" or where Congress itself has authorized

the courts to "formulate substantive rules of decision." *Tex. Indus.*, 451 U.S. at 640–41 (quotation omitted).

Here, the Federal Power Act does not lack a rule of decision—it provides one. Section 21 of the statute authorizes "the exercise of the right of eminent domain," a power that is defined by the Fifth Amendment. 16 U.S.C. § 814; *see Miller*, 317 U.S. at 380; *Bodcaw*, 440 U.S. at 203. The Act thus has no "gaps" requiring interstitial lawmaking, and it offers no indication that Congress meant for federal courts to build out compensation standards. Even so, the *Georgia Power* Court supplemented the Act with federal common law, and thus granted more compensation than authorized by Congress or required by the Constitution.

*Georgia Power* also undermined Congress's ability to delegate the eminent domain power. Though it acknowledged other cases had concluded that federal law determines "just compensation," it said those cases were different because they involved the United States exercising condemnation authority itself rather than delegating that authority to a private party. *Ga. Power*, 617 F.2d at 1119–20, 1119 n.9 (citing, *e.g.*, *Miller*, 317 U.S. at 380). But that distinction has no basis—the choice of how to exercise the eminent domain power and what additional compensation to provide belongs to Congress alone. *Accord Thomas*, 59 F.4th at 1175 (Jordan, J., concurring); *Ga. Power*, 617 F.2d at 1129 (Rubin, J., dissenting).

In short, the Federal Power Act should have been interpreted to authorize only the compensation required by the Fifth Amendment—nothing in the Act suggests Congress intended

22-10435                GRANT, J., Concurring                7

to grant more compensation than that. "[I]t is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law." *City of Milwaukee*, 451 U.S. at 317. *Georgia Power* was wrong to hold otherwise.

## II.

Like the Federal Power Act, the Natural Gas Act authorizes private licensees to acquire property "by the exercise of the right of eminent domain." 15 U.S.C. § 717f(h). And like the Federal Power Act, the Natural Gas Act provides no indication that Congress intended to authorize additional compensation. *See id.* So—like the Federal Power Act—the Natural Gas Act *should* be read as providing no more compensation than is required by the Fifth Amendment.

But that was not this Court's holding in *Thomas*. There, the panel held that the Natural Gas Act incorporates state law standards of compensation. 59 F.4th at 1175. In doing so, it extended *Georgia Power*'s error—an error that previously affected only a single law. In explaining its holding, the panel said that the prior-panel precedent rule required it to analyze the Natural Gas Act under the *Georgia Power* framework. *Id.* at 1164–65, 1168–69.

I disagree. The prior-panel precedent rule requires this Court to follow *Georgia Power*'s construction of Section 21 of the Federal Power Act—the statute at issue in that case. But it does not require us to extend that case's reasoning to a new statute. No doubt, there are many similarities between the Federal Power Act and the Natural Gas Act—first among them a delegation to private

parties of "the exercise of the right of eminent domain." *Compare* 16 U.S.C. § 814, *with* 15 U.S.C. § 717f(h).  But similar (or even identical) language is not enough.  "[S]tare decisis doesn't apply to statutory interpretation unless the statute being interpreted is the same one that was being interpreted in the earlier case." *Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 548 (11th Cir. 2019) (quoting Bryan A. Garner et al., *The Law of Judicial Precedent* 343 (2016)).  So when an earlier case construes a statute under a misguided methodology, it does not require future panels to apply that same incorrect methodology to all similar statutes.

To be sure, the prior-panel precedent rule is a crucial part of our Circuit's jurisprudence.  "It promotes predictability of decisions and stability of the law, it helps keep the precedential peace among the judges of this Court, and it allows us to move on once an issue has been decided." *Atl. Sounding Co. v. Townsend*, 496 F.3d 1282, 1286 (11th Cir. 2007) (E. Carnes, J., concurring).  But it is not unlimited—indeed, our deference to prior panels can only be absolute because it is narrow.  And we "have pointed out many times that regardless of what a court says in its opinion, the decision can hold nothing beyond the facts of that case." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010).  A panel has the authority to bind this Circuit on the legal question before it, but not to dictate the answer to a different legal question.

There is, moreover, "a difference between following a precedent and extending a precedent." *Jefferson Cnty. v. Acker*, 210 F.3d 1317, 1320 (11th Cir. 2000).  We should be especially careful

to remain within the limits of the prior-panel precedent rule when dealing with "moribund" precedents whose "reasoning has been undermined by later decisions." *Id.* And if a discredited precedent does not directly control, we need not extend that decision—"by even a micron." *Id.* That principle should give us further pause about expanding *Georgia Power*'s reach. After all, in the years since *Georgia Power*, the Supreme Court has repeatedly admonished against energetic federal common lawmaking. *See, e.g.*, *Rodriguez v. FDIC*, 140 S. Ct. 713, 717 (2020); *City of Milwaukee*, 451 U.S. at 315–17; *Tex. Indus.*, 451 U.S. at 640–41.

In sum, no matter how similar the Federal Power Act and the Natural Gas Act may be, they are different statutes. A court's construction of one does not bind future courts on the interpretation of the other. By holding otherwise, *Thomas* went beyond the limits of our prior-panel precedent rule and needlessly extended old reasoning to a new context.

★      ★      ★

*Thomas* requires that we affirm the district court's reading of the Natural Gas Act. But its consequences reach no further. Just as *Georgia Power* binds future courts' interpretation of only the Federal Power Act, *Thomas* binds future courts' interpretation of only the Natural Gas Act. Should this Circuit encounter other statutes delegating the federal eminent domain power—with nothing more—we should apply the Fifth Amendment rather than follow *Georgia Power*'s methodology.