# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-1796

_____

Anastasia Wullschleger, On behalf of themselves and all others similarly situated;
Geraldine Brewer

*Plaintiffs - Appellants*

v.

Royal Canin U.S.A., Inc.; Nestle Purina Petcare Company

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 11, 2023
Resubmitted: February 10, 2023
Filed: July 31, 2023

_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

We must decide whether amending a complaint to eliminate the only federal questions destroys subject-matter jurisdiction. The answer is yes, so the case must return to state court.

I.

Anastasia Wullschleger's dog, Clinton, suffered from health problems. The solution, at least according to a veterinarian, was to feed him specialized dog food available only by prescription. It has different ingredients than regular dog food but includes no special medication.

Prescription dog food is expensive. The crux of Wullschleger's complaint is that the "prescription" requirement is misleading because the Food and Drug Administration never actually evaluates the product. And the damages came from its higher sales price.

The original complaint, which included only state-law claims, reflected these theories. Brought on behalf of all similarly situated Missouri consumers, it alleged a violation of Missouri's antitrust laws, claims under Missouri's Merchandising Practices Act, and unjust enrichment. Wullschleger initially filed her complaint in state court, but Royal Canin and Nestle Purina quickly removed it to federal court. The district court then remanded it—a decision that ended up before us on appeal. *See* 28 U.S.C. § 1453(c)(1) (providing for an appeal of "an order of a district court granting or denying a motion to remand a class action").

We concluded that Wullschleger's antitrust and unjust-enrichment claims had important federal ingredients that would require "explication of federal law." *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (allowing removal when a state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial"). The antitrust claim, for example, alleged a conspiracy consisting of unlawful parallel conduct between the manufacturers, pet-food stores, and other pet-food producers to ignore Food and Drug Administration guidance and bypass regulatory approval. *See* 21 U.S.C. §§ 321(f)–(g), 352(o), 360; Draft Compliance Policy Guide Sec. 690.150 on Labeling and Marketing of Nutritional Products Intended for Use To Diagnose, Cure, Mitigate, Treat, or Prevent

Disease in Dogs and Cats, 77 Fed. Reg. 55,480 (Sept. 10, 2012). The complaint's prayer for relief, which requested an injunction to stop the violations of federal law, only added to the federal character of the case. *See Wullschleger*, 953 F.3d at 522. We decided it belonged in federal court. *See id.*

Wullschleger switched gears once she returned to the district court. She eliminated every reference to federal law in the complaint, cut the antitrust and unjust-enrichment claims, and narrowed her request for injunctive relief. As a replacement, she added a civil-conspiracy claim. *See Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 780–81 (Mo. banc 1999) (per curiam) (listing the elements of civil conspiracy).

The changes, however, made no difference. The district court believed that federal-question jurisdiction still existed. *See* 28 U.S.C. § 1331. It also eventually granted the manufacturers' motion to dismiss, which has resulted in a second appeal. *See* Fed. R. Civ. P. 12(b)(6). We asked the parties to submit supplemental briefing on whether subject-matter jurisdiction exists.

## II.

No matter the stage of the case, we must be sure it exists, even if the parties expect a decision on the merits. *See Bilello v. Kum & Go, LLC*, 374 F.3d 656, 659 (8th Cir. 2004) ("[W]hen the record indicates jurisdiction may be lacking, we must consider the jurisdictional issue sua sponte."). Our review is de novo. *See M & B Oil, Inc. v. Federated Mut. Ins. Co.*, 66 F.4th 1106, 1108 (8th Cir. 2023).

## A.

Original jurisdiction is the key to getting into federal court, whether by filing there from the start or by removal. *See id.* at 1109. At first, original jurisdiction came through the federal questions in Wullschleger's complaint. *Wullschleger*, 953 F.3d at 521–22 (citing 28 U.S.C. § 1331). Not the typical type, which are "cause[s]

of action created by federal law." *Grable*, 545 U.S. at 312. Rather, ones consisting of "state-law claims that implicate significant federal issues." *Id.*

To qualify, one or more of the claims in her complaint must have "(1) necessarily raised [federal issues], (2) [that were] actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *See Gunn v. Minton*, 568 U.S. 251, 258 (2013). *Id.* We determined in the first appeal that Wullschleger's antitrust and unjust-enrichment claims fell into this "special and small category" of cases. *Id.*

Now those claims are gone. All that remains are the Missouri Merchandising Practices Act claims, which do not *necessarily* raise a substantial federal issue. *See Wullschleger*, 953 F.3d at 521. Wullschleger kept those claims largely the same on remand, so they cannot supply the now-missing federal question. *See Otten v. Stonewall Ins. Co.*, 538 F.2d 210, 212 (8th Cir. 1976) (explaining how the law-of-the-case doctrine applies to legal determinations from a previous appeal).

Nor can her newly pleaded civil-conspiracy claim, which "is not [even] a separate and distinct action" in Missouri. *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 22 (Mo. banc 2012). It is instead a theory for holding the manufacturers jointly and severally liable for their allegedly illegal conduct. *See id.* And it is based on the same basic theory as the Missouri Merchandising Practices Act claims: the manufacturers misled pet owners into believing that prescription pet food *legally required* a prescription. If those claims cannot create federal-question jurisdiction, then the civil-conspiracy claim cannot either. *See Wullschleger*, 953 F.3d at 521.

Just on the face of the amended complaint, the answer today is as clear as it can be. Only the carryover claims and their civil-conspiracy counterpart remain, and neither one presents a federal question. It is no longer possible to say that "dependence on federal law permeates the allegations" of Wullschleger's complaint. *Id.* at 522. In fact, the opposite is true: there is nothing federal about it.

B.

The manufacturers, for their part, would rather have us focus on the original complaint. In their view, amendments do not matter: once a federal question, always a federal question.

The manufacturers' argument runs into our rule that "an amended complaint [supersedes] an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). It makes no difference whether the case ends up in federal court through removal. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 929 (8th Cir. 2005) (holding that the district court had jurisdiction after removal from state court based on an amended complaint).[1] As we put it nearly 100 years ago, if "[t]he plaintiff . . . change[s] his pleading voluntarily [so] that the court will no longer have jurisdiction . . . then [it] becomes the duty of the court to remand the case, if it be a removed case." *Highway Constr. Co. v. McClelland*, 15 F.2d 187, 188 (8th Cir. 1926) (per curiam); *see* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

There is, to be sure, another rule that "the jurisdiction of the [c]ourt depends upon the state of things at the time of the action brought." *Mollan v. Torrance*, 22 U.S. 537, 539 (1824). But both can be true: we can assess "the state of things" at the time of filing and still evaluate jurisdiction according to the allegations in an amended complaint. As the Second Circuit has explained, the "time-of-filing rule applies to changes [to] the 'state of things,' . . . not to changes [to] the '*alleged* state

---

[1]There is an exception. We would have looked at the original complaint if the "district court [had] order[ed] [Wullschleger] to amend [her] complaint or [if] the decision to amend [was] otherwise involuntary." *Atlas Van Lines*, 209 F.3d at 1067; *see Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1240–42 (8th Cir. 1995). Neither, however, occurred here.

of things.'" *Gale v. Chi. Title Ins. Co.*, 929 F.3d 74, 78 (2d Cir. 2019) (quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007)). *Both* "must support jurisdiction." *Id.* at 77.

The distinction between the two is subtle. The "state of things," which is subject to the time-of-filing rule, refers to the actual facts on the ground. Suppose, for example, that one party destroys diversity by moving to another state after filing. This change to the "state of things" does not destroy diversity jurisdiction, even if living in that state from the beginning would have. *See Morgan's Heirs v. Morgan*, 15 U.S. 290, 297 (1817). The same goes for after-filing changes to the amount-in-controversy. *See Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294–95 (1938); *Fochtman v. Hendren Plastics, Inc.*, 47 F.4th 638, 642–43 (8th Cir. 2022).

We treat changes to the "*alleged* state of things" differently. *Gale*, 929 F.3d at 78 (quoting *Rockwell*, 549 U.S. at 473). For example, a plaintiff can add a federal claim after removal to cure a lack of subject-matter jurisdiction, *see Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 185 (7th Cir. 1984); *see also ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 92 (1st Cir. 2008) (allowing a plaintiff to "switch[] jurisdictional horses" in an amended complaint), or replace a diverse defendant with a non-diverse one to "divest[] the district court of jurisdiction," *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP*, 362 F.3d 136, 142 (1st Cir. 2004); *see McClelland*, 15 F.2d at 188. The facts on the ground have not changed, but the facts in the complaint have. Under our rule that "an amended complaint [supersedes] an original complaint," these changes can create or destroy federal jurisdiction. *Atlas Van Lines*, 209 F.3d at 1067; *see Gale*, 929 F.3d at 78.

Was there a change to the "state of things" or the "alleged state of things" here? The facts on the ground never changed, but the allegations in the complaint did. There is little difference, from a jurisdictional perspective, between *adding* a federal claim in the absence of federal-question jurisdiction, *see Bernstein*, 738 F.2d at 185, and *subtracting* a claim or two, as happened here, to eliminate federal-

question jurisdiction. Both involve the same simple act of amendment, a change to the "alleged state of things." *See Shaw v. Gwatney*, 795 F.2d 1351, 1354 (8th Cir. 1986) (looking to the amended complaint when the plaintiff added a claim that fell within the exclusive jurisdiction of the Court of Federal Claims).

To the extent that other courts have come out differently, most have emphasized forum-manipulation concerns[2] over jurisdictional rigor. *See, e.g.*, *16 Front St., L.L.C. v. Miss. Silicon, L.L.C.*, 886 F.3d 549, 558–59 (5th Cir. 2018); *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101–02 (2d Cir. 2015). Taking the above example, some might say that attempting to cure a lack of federal-question jurisdiction by adding federal claims after removal is not forum-manipulative, but subtracting federal claims to thwart removal is. So we should allow the former but not the latter.

Jurisdictional first principles counsel otherwise. One reason is that there is no preference for federal jurisdiction. Quite the opposite: "all doubts about federal jurisdiction must be resolved in favor of remand." *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009). It makes little sense, as the manufacturers argue, to apply a one-way forum-manipulation ratchet in favor of federal jurisdiction, but not the other way around.

---

[2]There is a straightforward procedural answer to curbing potential forum manipulation. Unless amendments to the complaint happen quickly, a district court can withhold "leave" to amend if the only reason for the changes is to destroy federal jurisdiction. Fed. R. Civ. P. 15(a)(1) (explaining when a party may amend as of right), (a)(2) (allowing a district court to deny leave to amend "when justice so requires"); *see Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992) (per curiam) (pointing to "undue delay," "bad faith," and "undue prejudice to the non-moving party" as reasons to deny leave to amend (citation omitted)); *see also Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 309 (8th Cir. 2009) (directing district courts "to consider . . . 'the extent to which the joinder of [a] nondiverse party is sought to defeat federal jurisdiction'" in deciding whether to grant leave to amend (citation omitted)).

A second is that it is not even clear that the time-of-filing rule applies in federal-question cases, and certainly not to the extent it does in diversity cases. It first arose in a diversity case nearly 200 years ago. *See Mollan*, 22 U.S. at 539. And for the most part, it has not strayed from there. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004) (explaining that the time-of-filing rule "measures all challenges to subject-matter jurisdiction *premised upon diversity of citizenship* against the state of facts that existed at the time of filing" (emphasis added)); *see also ConnectU*, 522 F.3d at 92; *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1503 (3d Cir. 1996); Erwin Chemerinsky, *Federal Jurisdiction* § 5.5, at 377–78 (6th ed. 2012) (recognizing this distinction).

And perhaps most importantly, we adopt the distinction between the "state of things" and "*alleged* state of things" because our precedent requires it. *Gale*, 929 F.3d at 78 (quoting *Rockwell*, 549 U.S. at 473). Recall that we stated nearly 100 years ago that it is a court's "duty . . . to remand the case," even if the plaintiff voluntarily amends the complaint in "a removed case." *McClelland*, 15 F.2d at 188.[3] The *McClelland* rule makes as much sense today as it did then.

C.

The manufacturers hope to keep the case in federal court through supplemental jurisdiction. It is too late, however, to turn back the clock. The original complaint is "without legal effect," *Atlas Van Lines*, 209 F.3d at 1067, meaning that the possibility of supplemental jurisdiction vanished right alongside the once-present federal questions, *see* 28 U.S.C. § 1367(a). *See M & B Oil*, 66 F.4th at 1109 (discussing the need for "original jurisdiction" in removal situations); *see also Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243–44 (11th Cir.

---

[3]To the extent that *McLain v. Andersen Corp.*, 567 F.3d 956, 965 (8th Cir. 2009), is inconsistent with *McClelland*, we follow the latter. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (requiring a "subsequent panel[]" to follow the "earliest opinion" (citation omitted)).

2007) (per curiam) (explaining that when "there [is] no longer a federal claim on which the district court could exercise supplemental jurisdiction," the source of the "district court's subject-matter jurisdiction cease[s] to exist"). The only option now is state court.

## III.

We accordingly vacate the district court's judgment and send this case back to the district court with directions to remand it to Missouri state court.

_____