# United States Court of Appeals
## For the Eighth Circuit
_____

No. 24-1693
_____

WBI Energy Transmission, Inc.

*Plaintiff - Appellant*

v.

189.9 rods, more or less, located in Township 149 North, Range 98 W Section 11: W1/2SE1/4 Section 14: NW1/4NE1/4 McKenzie County, North Dakota, An easement and right-of-way across; 227.8 rods, more or less, located in Township 149 North, Range 98 W Section 11: N1/2SW1/4, W1/2SE1/4, McKenzie County, North Dakota, An easement and right-of-way across; 242.0 rods, more or less, located in Township 149 North, Range 98 W Section 2: SW1/4SE1/4 Section 11: NE1/4, McKenzie County, North Dakota, An easement and right-of-way across; 335.3 rods, more or less, located in Township 150 North, Range 98 W Section 35: W1/2E1/2 McKenzie County, North Dakota, An easement and right-of-way across; 223.8 rods, more or less, located in Township 149 North, Range 98 W Section 28: S1/2N1/2, McKenzie County, North Dakota, An easement and right-of-way across; 83.6 rods, more or less, located in Township 149 North, Range 98 W Section 14: NW1/4, McKenzie County, North Dakota, An easement and right-of-way across; Leonard W. Hoffmann, Trustee of the Hoffmann Living Trust dated March 8, 2002; David L. Hoffmann; Denae M. Hoffmann; Margaret A. Hoffmann, Trustee of the Hoffmann Living Trust dated March 8, 2002; Rocky & Jonilla Farms, LLP; Randall D. Stevenson; All other Unknown Owners, of the above lands

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of North Dakota - Western

_____

Submitted: October 24, 2024
Filed: March 24, 2025
_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Attorney fees are typically unavailable when the United States exercises its eminent-domain power.  Nothing changes when the federal government delegates the power to a private party under the Natural Gas Act, so we vacate the award of fees in this case.

I.

WBI Energy Transmission, Inc., transports and stores natural gas.  To build a pipeline, it needs a "certificate of public convenience and necessity" from the Federal Energy Regulatory Commission.  Upon receiving one, WBI usually acquires the easements it needs through voluntary sales.  But, for the strip of land needed to build a pipeline through McKenzie County, North Dakota, one family turned down its offers, so it filed a federal condemnation action under the Natural Gas Act instead. *See* 15 U.S.C. § 717f(h).

Following a winding procedural history and three years of negotiations, the parties settled on the amount of "just compensation" for the easement.  U.S. Const. amend. V.  One unresolved question was *who* had to pay the attorney fees that the family had accumulated.  Based on North Dakota law, the district court decided it was WBI. *See Petersburg Sch. Dist. of Nelson Cnty. v. Peterson*, 103 N.W. 756, 759 (N.D. 1905).

II.

The availability of attorney fees depends on whether state or federal law determines the compensation that is due. Under North Dakota law, as the district court pointed out, attorney fees are available in condemnation proceedings. *See id.* (interpreting Article I of the North Dakota Constitution). WBI's view is that federal law applies because it was exercising the eminent-domain power of the United States, which would owe no attorney fees if it did the condemning. *See United States v. Bodcaw Co.*, 440 U.S. 202, 203 (1979) (per curiam). Our task, applying de novo review, is to determine which approach is right. *See Ideus v. Teva Pharms. USA, Inc.*, 986 F.3d 1098, 1101 (8th Cir. 2021).

A.

Start with the text of the Natural Gas Act, which lets certificate holders "exercise . . . the right of eminent domain" to secure any "necessary right-of-way to construct, operate, and maintain a pipe[]line or pipe[]lines for the transportation of natural gas." 15 U.S.C. § 717f(h). This "categorical" delegation allows private parties like WBI to exercise the federal eminent-domain power. *PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 498 (2021); *see Kohl v. United States*, 91 U.S. 367, 372 (1875) (recognizing that "the right of eminent domain exists in the Federal government"). By stepping into the federal government's shoes, WBI inherited all its rights and obligations. It could take both "state-owned [and private] property," *PennEast*, 594 U.S. at 488, but it would have to pay "just compensation" for what it took. U.S. Const. amend. V; *see United States v. Miller*, 317 U.S. 369, 373 (1943); *Sabal Trail Transmission, LLC v. 3.921 Acres of Land in Lake Cnty. Fla.*, 74 F.4th 1346, 1348 (11th Cir. 2023) (Grant, J., concurring).

"Just compensation" under the Fifth Amendment has a well-established legal meaning that usually equates to "market value," the "full monetary equivalent of the property taken." *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473 (1973). But the focus is always on the value of the property itself, not

what the owner spends trying to keep it. *See Bodcaw*, 440 U.S. at 203 ("[J]ust compensation 'is for the property, and not to the owner.'" (quoting *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 326 (1893))). Under the Fifth Amendment, property owners cannot recover for "indirect costs" like attorney fees and expenses. *Id.*

Only a statute can require more. And sometimes they do. Consider the Uniform Relocation Assistance and Real Property Acquisition Policies Act, which provides for the reimbursement of "reasonable costs, disbursements, and expenses, including . . . attorney . . . fees." 42 U.S.C. § 4654(a) (granting them when "the final judgment is that the Federal agency cannot acquire the real property" or "the proceeding is abandoned");[1] *see also Bodcaw*, 440 U.S. at 204. Or the General Bridge Act, which requires compensation as "ascertained and paid according to the laws of [the] State" in which the condemnation occurs, including attorney fees where available. *See* 33 U.S.C. § 532. Another part of the Natural Gas Act even leaves it to a regulatory agency "to determine the maximum consideration permitted as just compensation," subject, of course, to the minimum constitutional requirements. 15 U.S.C. § 717y(b)(2). In each case, "legislative grace[,] rather than constitutional command," makes attorney fees possible. *Bodcaw*, 440 U.S. at 204.

The question is whether Congress did the same thing here, in the statute governing *this* taking. On that point, the Natural Gas Act says nothing about the measure of compensation due to a property owner. It does not even use the words "just compensation," let alone say that attorney fees are available or that an agency or state law can provide them. Without such an exercise of "legislative grace," the default rule applies: "just compensation" under the Fifth Amendment. *Bodcaw*, 440 U.S. at 204. Congress gives private parties like WBI just the power it has, including the rights and obligations that come with it. *See Sabal Trail Transmission*, 74 F.4th

---

[1]The term "Federal agency" includes a private party like WBI that "has the authority to acquire property by eminent domain under Federal law." 42 U.S.C. § 4601(1). What is missing here, however, is satisfaction of either one of the statutory conditions for attorney fees. *See id.* § 4654(a)(1)–(2).

at 1348 (Grant, J., concurring) ("[W]hen a federal statute authorizes 'the exercise of the right of eminent domain,' without saying more, the statute authorizes only the compensation required by the Fifth Amendment—regardless of whether the United States or a private licensee exercises that power."). Those obligations do not include paying attorney fees. *See Bodcaw*, 440 U.S. at 202 ("[A]ttorneys' fees and expenses are not embraced within just compensation." (citation omitted)).

### B.

The district court had a different view. It saw a gap in the Natural Gas Act and awarded attorney fees based on its belief that state law could fill it. In support of importing state law, it relied on *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979).[2]

*Kimbell Foods* presented a choice-of-law dispute about lien priority in a federal statute. *See id.* at 726. Congress had not "specif[ied] the appropriate rule of decision," so the Court needed to decide "[w]hether to adopt state law or to fashion a nationwide federal rule." *Id.* at 727–28. It laid out a three-part test balancing the "need for a nationally uniform body of law," the risk of "frustrat[ing] specific objectives of the federal program[]" by relying on state law, and the potential for the "disrupt[ion] [of] commercial relationships." *Id.* at 728–29. We have applied

---

[2]And so have other courts when deciding whether attorney fees are available under the Natural Gas Act. *See Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237, 250 (3d Cir. 2019); *Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*, 59 F.4th 1158, 1165–66 (11th Cir. 2023); *cf. Columbia Gas Transmission Corp. v. Exclusive Nat. Gas Storage Easement*, 962 F.2d 1192, 1195 (6th Cir. 1992) (incorporating state law under the Natural Gas Act to determine the value of the property taken); *Ga. Power Co. v. Sanders*, 617 F.2d 1112, 1115 (5th Cir. 1980) (en banc) (same under the Federal Power Act). In our view, however, "first principles counsel otherwise." *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 924 (8th Cir. 2023), *aff'd*, 604 U.S. 22 (2025).

*Kimbell Foods* to fill statutory "gaps" before. *See, e.g.*, *Guenther v. Griffin Constr. Co.*, 846 F.3d 979, 982 (8th Cir. 2017).

The problem is that, when it comes to eminent domain, congressional silence leaves no "gaps" to fill. *See United States v. Great Plains Gasification Assocs.*, 813 F.2d 193, 195 (8th Cir. 1987) (observing that when we have "sufficient direction . . . , *Kimbell Foods* is inapplicable"). It is true that nothing in the Natural Gas Act tells certificate holders what they must pay when taking property. But we already know that any gaps are filled by the Fifth Amendment itself, including the obligation to pay "just compensation." *Bodcaw*, 440 U.S. at 203; *see Miller*, 317 U.S. at 379–80 (applying the Fifth Amendment standard directly). The rules of the road do not change, in other words, when the federal government hands the keys over to a private party like WBI. *See PennEast*, 594 U.S. at 489 (observing that Congress delegated "the *federal* eminent domain power").

*PennEast* confirms our conclusion. At issue there was whether New Jersey could raise sovereign immunity as a defense to a gas company's decision "to exercise the federal eminent domain power" over "two parcels in which [it] assert[ed] a possessory interest." *Id.* at 491. The United States played no role in the condemnation, other than authorizing it through the Natural Gas Act. The Supreme Court nevertheless rejected New Jersey's sovereign-immunity defense. In its view, "the States [had] consented in the plan of the Convention to the exercise of *federal eminent domain power*." *Id.* at 501 (emphasis added). That is, through the Natural Gas Act, the gas company received what amounted to the *entire* federal eminent-domain power, not just some diluted form of it, which was enough to prevail in the face of a defense that ordinarily would have required dismissal. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 92 (2000).

It may well be that different concerns are at stake when the United States is exercising its own power under the Fifth Amendment, as in *Miller* and *Bodcaw*. In those circumstances, the "powerful federal interest[s] at play" are arguably weightier than when a private company like WBI is acting on its own. *Tenn. Gas*, 931 F.3d at

248. Not to mention that saddling private parties with attorney fees and other indirect costs does not raise the same fiscal "concern[s] about the spending of federal dollars" that exist when the United States does the taking. *Id.* at 249.

But these are policy arguments better addressed to Congress, which can amend the Natural Gas Act if it wishes. *See Bodcaw*, 440 U.S. at 204. Indeed, when the statute was first enacted, it was silent on how companies were supposed to secure the necessary easements to build natural-gas pipelines, leaving them at the mercy of state law. *See PennEast*, 594 U.S. at 489. Congress responded by delegating "the *federal* eminent domain power," which had the effect of removing state-law roadblocks. *Id.* Another amendment could provide an express right to attorney fees or make their availability contingent on state law or agency action. For now, however, the bare delegation in the Natural Gas Act gives landowners no more than if the United States were acting. It is the same "right to [just] compensation" either way. *Tenn. Gas*, 931 F.3d at 258 (Chagares, J., dissenting).

The Fifth Amendment, not state law or federal common law, fills any "gaps" in the Natural Gas Act. And unfortunately for these landowners, it provides no right to attorney fees.

III.

We accordingly vacate the attorney-fee award.

_____